## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH TAGGART, | |
| *Plaintiff*, | CIVIL ACTION |
| v. | NO. 20-5503 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, *et al.*, | |
| *Defendants*. | |

**PAPPERT, J.**                                                    **June 3, 2021**

### MEMORANDUM

Rather than just make his mortgage payments like other homeowners, serial litigant Kenneth Taggart has wasted judicial resources and his opponents' time and money for more than a decade.[1]  This case is the latest involving his property at 45 Heron Road, Holland, PA 18966.  *See Taggart v. Morgan Stanley ABS Cap. I Inc.*, No.

---

[1] As the Court explained in a recent case involving one of Taggart's other mortgages, most of his suits are naked attempts to avoid paying those obligations.  *Taggart v. Saltz*, No. 20-1638, 2020 WL 5943728, at *1 n.1 (E.D. Pa. Oct. 7, 2020).  He has not received a favorable judgment in any of his actions and has been warned that his cases "are an abuse of the judicial process."  *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 12-3177, 2013 WL 3009732, at *3 (E.D. Pa. June 18, 2013); s*ee also Taggart v. Harrison*, No. 07-3645; *Taggart v. Chase Bank USA, N.A., et al.*, No. 09-1533; *Taggart v. Norwest Mortgage, Inc., et al.*, No. 09-1281; *Taggart v. Greenpoint Mortgage Funding, Inc., et al.*, No. 09-3416; *Taggart v. Greenpoint Mortgage Funding, Inc., et al.*, No. 09-3417; *Taggart v. Chase Bank USA, N.A.*, No. 09-3761; *Taggart v. Wells Fargo Home Mortgage, Inc., et al.*, No. 10-843; *Taggart v. BAC Home Loans Servicing, LP, et al.*, No. 10-1223; *GMAC Mortgage LLC, et al. v. Taggart*, No. 10-2393; *Wells Fargo Bank, N.A. v. Taggart*, No. 10-2657; *Taggart v. Franconia Township, et al.*, No. 10-2725; *Deutsche Bank National Trust Co. v. Taggart*, No. 11-4668; *Taggart v. GMAC Mortgage LLC, et al.*, No. 12-415; *Taggart v. County of Montgomery, et al.*, No. 12-1913; *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 12-2359; *Taggart v. GMAC Mortgage LLC, et al.*, No. 12-4077; *Taggart v. Deutsche Bank Nat'l Co., et al.*, No. 12-4455; *Taggart v. United States*, No. 15-mc-255; *Taggart v. Bank of New York Mellon, et al.*, No. 15-2985; *Taggart v. Morgan Stanley ABS Capital I Inc. Trust, et al.*, No. 16-062; *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 16-063; *Taggart v. United States Dep't of Justice, et al.*, No. 16-4040; *Taggart v. United States Dep't of Justice*, No. 17-3210; *Taggart v. Montgomery County Court of Common Pleas, et al.*, No. 18-1409; *Taggart v. New Century Financial Services, Inc., et al.*, No. 20-4261.

16-cv-62, 2016 WL 4076818, at *4 (E.D. Pa. Aug. 1, 2016); *Taggart v. Northwest Mortgage, Inc., et. al.*, No. 09-cv-01281; *Deutsche Bank Nat'l Trust Co. v. Taggart*, No. 11-cv-04668.  He raises numerous claims—arising out of a state court foreclosure proceeding—against: (1) Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Abs Capital I Inc. Trust 2007-HE 2; (2) Stern & Eisenberg, P.C.; (3) Specialized Loan Servicing, LLC; (4) Mortgage Electronic Registration Systems, Inc.; and (5) Wells Fargo Bank, N.A.  Taggart claims Deutsche Bank does not own the mortgage and the other Defendants violated various procedures and statutes in handling the mortgage and the foreclosure proceeding in state court.  The Defendants move to dismiss all claims and the Court grants their Motions in full.

As here, Taggart's frivolity has often been aided and abetted by Joshua Thomas, a lawyer who has drawn increasing scrutiny, criticism and sanction from our Court, other district courts and the Third Circuit Court of Appeals.  Thomas's conduct in this case earns him further sanctions.

I

On October 1, 2020, Taggart sued Defendants in the Bucks County Court of Common Pleas.  (Notice of Removal, ECF 1.)  Defendants removed to federal court in November and, after they moved to dismiss, Taggart amended his complaint on January 11, 2021.  (ECF 18, 20.)

In 2016, when Taggart was last in federal court trying to avoid making mortgage payments on the Heron Road property, Judge Smith provided a detailed account of the history of the note, mortgage and loan at issue in this case.  *See Taggart*, 2016 WL 4076818, at *1–3.  To summarize, Taggart executed a promissory note for $382,500

with Decision One Mortgage on September 15, 2006.  *Id.* at *1; *see* (Am. Compl. ¶ 153).

He also executed a mortgage with MERS, acting as nominee for Decision One

Mortgage.  *Id.*; *see* (Am. Compl. ¶¶ 32, 45, 135, 204).  On May 25, 2010 MERS assigned

its interest in the mortgage to Deutsche Bank National Trust Company, as Trustee for

Morgan Stanley Abs Capital I Inc. Trust 2007-HE 2.  *Id.* at *2; *see* (Am. Compl. ¶ 157).

That assignment is central to Taggart's claims.  He contends the assignment was

invalid because Decision One Mortgage had "ceased to exist" on May 25, 2010.[2]  (Am.

Compl. ¶ 135.)  Because it purportedly no longer existed, it was not a member of MERS

and MERS could not assign the mortgage to Deutsche Bank.  (*Id.*)  Thus, he claims

Deutsche Bank lacks the legal capacity to enforce the mortgage.  (*Id.*)  Deutsche Bank

disagrees and sought foreclosure three times in Pennsylvania state court after Taggart

defaulted on his mortgage payments.  *See* (*id.* at ¶ 163).

Recently, the Bucks County Court of Common Pleas granted Deutsche Bank

summary judgment in the latest foreclosure proceeding, entering judgment *in rem*

against Taggart for $835,182.13 plus interest at a rate of $81.56 *per diem*.[3]  (Deutsche

Bank Letter to Court, ECF 33.)  After Taggart appealed that judgment, the court issued

an opinion explaining that the evidence in the foreclosure action showed MERS

---

[2] This argument is one of Taggart's go-to tactics for avoiding paying his mortgages.  He consistently challenges the validity of his mortgages or their assignments after a mortgagee or servicer "ceases to exist" as a result of a name change or acquisition by another financial institution. *See Taggart v. United States Dep't of Justice*, No. 17-cv-3210, 2018 WL 1911342, at *1 (E.D. Pa. Apr. 23, 2018).

[3] The Court takes judicial notice of the state court order attached to Defendants' letter.  *See Schafer v. Decision One Mortg. Corp.*, No. 08-cv-5653, 2009 WL 1532048, at *3 (E.D. Pa. May 29, 2009) ("[A] court may take judicial notice of the record from a state court proceeding and consider it on a motion to dismiss.").

assigned the mortgage to Deutsche Bank in 2010 and that, following that assignment, Deutsche Bank became the mortgagee. *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Opinion, Dkt. No. 161.

Taggart's Amended Complaint totals 400 paragraphs and 77 pages. It lodges 29 Counts against Defendants. Stated otherwise, the Amended Complaint is a convoluted, incoherent, jumbled mess.[4] It lacks a clear chronology or logical organization and numerous paragraphs include spelling and grammatical errors. Taggart spends much of the first 152 paragraphs and 35 pages responding to Defendants' now-moot motions to dismiss his original complaint and recounting the state court foreclosure proceeding. In fact, the Amended Complaint borrows entire paragraphs from Taggart's pleadings in the state court foreclosure action. *Compare, e.g.*, (Am. Compl. ¶ 118) *with* (Deutsche Bank Mot. to Dism., Exh. 2 at 21–22, ECF 25-4). Taggart's "Preliminary Alligations [sic]" do not begin until Paragraph 153. From there, the Amended Complaint continues making confusing (and often inapposite) allegations until it begins its litany of Counts against Defendants. Paragraph 197 provides a good example of the pleading's sloppiness and incoherence:

> Bucks County is the proper venue to bring this action to quiet title as the properties are located in Montgomery County. Pennsylvania Code, Rule'1062' [sic], requires that an 'Action to Quiet Title' be brought in the county in which the property interests lie. The property subject to the 'Quiet Title' action lies in Montgomery County, Pennsylvania.

(Am. Compl. ¶ 197.) The Amended Complaint contains countless other rambling,

---

[4] Although the Court dismisses Taggart's claims for other reasons, his incoherent pleading likely violates Rule 8 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8 (pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

conclusory and vague claims.  The Court might overlook such silliness from inexperienced *pro se* litigants.  It expects far more from counseled pleadings.

Despite the Amended Complaint's shortcomings, its essence is fairly clear. Taggart's claims against Deutsche Bank stem from its foreclosure actions in state court. (Am. Compl. ¶ 2); *see* (*id.* at ¶ 8).  His claims against Stern & Eisenberg and MERS arise out of the same foreclosure actions.  (*Id.*)  He drags Wells Fargo into the mix by claiming Deutsche Bank used it as a servicer to collect in the foreclosure actions.  *See* (*id.* at ¶ 164).  In short, Taggart asks the Court to conclude that no Defendant has a valid interest in the Heron Road property and that Defendants violated several laws in trying to enforce the mortgage and collect from him.  In Counts 1 through 5, Taggart asserts quiet title claims against each Defendant.  Counts 6 through 10 are slander of title claims.  Count 11 is a breach of contract claim against Deutsche Bank.  In Counts 12 through 14 and 28 and 29, Taggart claims SLS, Deutsche Bank and Stern & Eisenberg failed to comply with foreclosure protections.  Count 15 adds an Unfair Trade Practices Act claim against Stern & Eisenberg.  Counts 16 through 18 assert various claims under the Fair Debt Collection Practices Act against Deutsche Bank, SLS and Stern & Eisenberg.  In Counts 19 to 24, Taggart claims Defendants violated the Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  Finally, Taggart asserts fraud claims against Deutsche Bank, SLS and Stern & Eisenberg in Counts 25 through 27.

On January 29, 2021, Wells Fargo moved to dismiss all claims against it for failure to state a claim.  (ECF 24.)  Taggart responded one week after his deadline to do so and Wells Fargo replied five days later.  (ECF 26.)  Deutsche Bank, SLS, MERS and

Stern & Eisenberg moved to dismiss the claims against them on February 4, 2021. (ECF 25.)  Nineteen days later, Taggart moved for an extension of time to respond and to exceed the Court's page limitation in his filing.  (ECF 27.)  The Court denied that motion, (ECF 29), and Taggart responded, again untimely, on February 25.  (ECF 31.)[5] Deutsche Bank and the others replied on March 4.  (ECF 32.)  On March 16, Deutsche Bank, SLS, MERS and Stern & Eisenberg informed the Court that the state court had entered summary judgment against Taggart in the foreclosure proceeding.  (ECF 33.) The Court ordered the parties to file letter briefs explaining the impact that ruling had on Taggart's claims in this case.  (ECF 34.)  Deutsche Bank, SLS, MERS and Stern & Eisenberg argue the state court judgment and collateral estoppel preclude relief on Counts 1 through 3, 5 through 8, 11 through 14 and 25 through 29.  (ECF 35.)  Wells Fargo contends the state court judgment precludes relief on all claims against it.  (ECF 36.)  Taggart, invoking another tired tactic, argues the state court judgment has no preclusive effect because it is based on fraud and he could not have brought the claims he raises now in the state court proceeding.  (ECF 36.)

After the parties submitted those letter briefs, Taggart moved for injunctive relief and a hearing on his quiet title claims.  (ECF 39.)  He insists that if the Court does not act quickly on these claims, he risks losing his home to a foreclosure sale based on the judgment against him in state court.  The motion is therefore best characterized as an attempt to appeal the state court foreclosure judgment.  In any event, the Court denies the motion because Taggart does not show a likelihood of success on the merits

---

[5] Thomas attributed both untimely filings to "calendaring error[s]."  (April 22 Hr'g Tr. 108:2–5, 109:3–5, ECF 50.)

or a genuine risk of irreparable harm.

## II

## A

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (internal citations and alterations omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679 (citations omitted).

B

"*Res judicata* provides that 'a federal court must give a state court judgment the same preclusive effect that the state court would give it.'" *Conte v. Mortg. Elec. Reg. Sys.*, No. 14-cv-6788, 2015 WL 1400997, at *4 (E.D. Pa. Mar. 27, 2015) (quoting *Sherk v. Countrywide Home Loans, Inc.*, No. 08-cv-5969, 2009 WL 2412750, at *6 (E.D. Pa. Aug. 5, 2009)).  Under Pennsylvania law:

> *Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action.  Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.  [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*Balent v. City of Wilkes–Barre*, 669 A.2d 309, 313 (Pa. 1995) (internal citation omitted). "The Supreme Court of Pennsylvania has held that an order is final for preclusion purposes unless or until it is overturned on appeal." *Regscan, Inc. v. Brewer*, No. 04-cv-6043, 2006 WL 401852, at *6 (E.D. Pa. Feb. 17, 2006) (citing *Shaffer v. Smith*, 673 A.2d 872, 874–75 (Pa.1996)), *aff'd*, 289 F. App'x 488 (3d Cir. 2008).  "A claim challenging a party's conduct that occurred prior to the state court entering judgment in a foreclosure proceeding . . . is subject to the principles of preclusion under res judicata." *Conte*, 2015 WL 1400997, at *4.

8

III

A

Without seeking permission to do so, Taggart responded to Wells Fargo's motion to dismiss a full week beyond the deadline. (ECF 26.) Then, five days after his response to the Deutsche Bank Defendants was due, he moved for an extension of time. (ECF 27.) The Court denied the extension and Taggart responded to the motion two days later, again a full week after the deadline. (ECF 29, 31.) Taggart and Thomas have made a habit of ignoring court deadlines and filing untimely pleadings in this Court. *See, e.g.*, *Taggart v. Norwest Mortgage, Inc., et al.*, No. 09-1281 (Taggart, proceeding *pro se*, requesting numerous extensions of time); *Jacovetti Law, P.C. v. Shelton*, No. 20-cv-163, 2020 WL 1491320 (E.D. Pa. Mar. 27, 2020) (noting that, in several cases, Thomas "has disregarded the rules and deadlines that ensure cases move in an orderly way"). The Court could have taken up Defendants' Motions before Taggart filed his untimely responses. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); LOCAL RULE OF CIV. P. 7.1(c). Nevertheless, it will consider his responses, such that they are, in deciding the Motions now.

B

R*es judicata* bars relief on several of Taggart's claims. As an initial matter, although Taggart's appeal of the state court's summary judgment is pending, the judgment is final for purposes of *res judicata*. *Regscan, Inc.*, 2006 WL 401852, at *6; *Schuldiner v. Kmart Corp.*, 450 F. Supp. 2d 605, 609 (E.D. Pa. 2006), *aff'd*, 284 F. App'x 918 (3d Cir. 2008) ("Furthermore, Pennsylvania law does not require that courts await appellate review in an initial action before res judicata or collateral estoppel may apply

9

to a second action.").  This final judgment precludes relief on several claims.

First, *res judicata* bars Taggart's quiet title and slander of title claims against Deutsche Bank.  The alleged cloud on his property and Deutsche Bank's purported slander occurred prior to, and during, the state court foreclosure proceeding. Accordingly, "[t]he time and place to [raise these issues] was in the state court proceedings." *Conte v. Mortg. Electr. Reg. Sys.*, No. 14-cv-6788, 2015 WL 1400997, at *5 (E.D. Pa. Mar. 27, 2015).  And, despite his arguments to the contrary, Taggart effectively raised at least a quiet title claim in the state court.  *See* (Deutsche Bank Mot. to Dism., Exh. 2 at 4–6, 22–27) (Taggart argued the state court lacked jurisdiction because Deutsche Bank could not prove it held an enforceable mortgage or valid chain of title).  By granting Deutsche Bank summary judgment, the state court necessarily rejected that claim.  *Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002); *see Laychock v. Wells Fargo Home Mortg.*, No. 07-cv-4478, 2008 WL 2890962, at *3 (E.D. Pa. July 23, 2008) ("A mortgage foreclosure also depends upon the existence of a valid mortgage."); *Williford v. LSF8 Master Participation Trust*, 2018 WL 451644, at *3 (E.D. Pa. Jan. 17, 2018) ("[A] foreclosure judgment necessarily includes a finding that the mortgage was valid, and that the mortgage holder who is the plaintiff in a foreclosure action has standing to foreclose."); *Lewis v. Citibank, N.A.*, 179 F. Supp. 3d 458, 462 (E.D. Pa. 2016) (quiet title and slander of title claims were "inextricably intertwined" with the state court's foreclosure judgment).  Taggart asks the Court in Counts 1 and 6 to declare that Deutsche Bank "has no valid and enforceable mortgage."  (Am. Compl. ¶¶ 215(a)–(f), 242(g)–(l).)  But to do that, the Court would have to ignore the state court's foreclosure judgment.  Because the Court must give "a state court judgment the

same preclusive effect that the state court would give it," these claims are dismissed

with prejudice.  *Conte*, 2015 WL 1400997, at *4–5.

Second, *res judicata* precludes relief on Taggart's breach of contract, fraud and

failure to comply with mortgage protections claims against Deutsche Bank.  Taggart

bases the breach of contract claim on his position that Deutsche Bank violated

numerous terms of the note and mortgage.  (Am. Compl. ¶ 280(a)–(n).)  He supports his

fraud claim with allegations that Deutsche Bank filed false pleadings and perpetrated a

fraud on the state court.  (*Id.* at ¶¶ 388–89.)  Finally, Taggart claims Deutsche Bank

failed to comply with mortgage protections by ignoring his purported loss mitigation

application.  (*Id.* at ¶¶ 288–90.)  Taggart could have, or did, raise these issues in the

state court foreclosure proceeding.[6]  *See* (Deutsche Bank Mot. to Dism., Exh. 2 at 17–

26.)  Like his quiet title and slander of title claims, the state court necessarily rejected

these claims in entering summary judgment for Deutsche Bank.  *See Holder*, 805 A.2d

at 502; *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Opinion, Dkt. No.

---

[6] In contesting the foreclosure summary judgment, Taggart argued the trial court erred in determining Deutsche Bank "evince[d] a proper ownership of the note and mortgage, chain of ownership of the mortgage and note, legal successor in interest to the mortgage and note, or [that it] possess[es] a valid and enforceable note and mortgage." *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, "Defendant/Appellant's Concise Statement of Matters Complained of on Appeal," Dkt. No. 158.  Similarly, he argued Deutsche Bank failed "to comply with pre-foreclosure notice(s)." *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, "Defendant/Appellant's Concise Statement of Matters Complained of on Appeal Regarding Order of the Court to File a 1925 Statement Pertaining to the Order Granting Motion for Summary Judgment on March 15, 2021," Dkt. No. 159.  The state court rejected those contentions. *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Opinion, Dkt. No. 161.

Taggart's Amended Complaint, on its own, bolsters the Court's conclusion.  For example, in pleading his breach of contract claim, Taggart alleges that, "As a result of Deutsche Bank's Actions, Defendant [sic] has suffered economic loss and emotional stress by having to defend a lawsuit which was filed in breach of contractual obligations." (Am. Compl. ¶ 281.)  He repeats this allegation, again referring to himself as "Defendant," in his failure to comply with mortgage protections claims.  (*Id.* at ¶¶ 285, 289, 293.)

161 (noting Taggart contested the foreclosure based on "improper notice, invalid assignment of the mortgage, and lack of payment records"). These claims are also dismissed. *See Conte*, 2015 WL 1400997, at *5.

C

*Res judicata* aside, Taggart does not state plausible quiet title claims against any Defendant. Rule 1061(b)(3) of the Pennsylvania Rules of Civil Procedure allows for an action to quiet title to "compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land." *US Bank Nat. Ass'n v. McClain*, No. 3062 EDA 2014, 2015 WL 6143916, at *7 (Pa. Super. Oct. 16, 2015). "The purpose of a quiet title action under this statute is to remove clouds on title and resolve conflict over interests in property." *Taggart*, 2016 WL 4076818, at *5 (citing *White v. Young*, 186 A.2d 919, 921 (Pa. 1963)).

Through his quiet title claims, Taggart requests that Defendants proffer evidence related to their alleged claim of title on his property. *See* (Am. Compl. ¶¶ 213, 220, 223, 233). Those requests are improper because, as this Court explained in addressing Taggart's most recent attempt to avoid paying this mortgage, the quiet title statute "is not a license to force any person somewhat associated with a property transaction to answer a series of requests for admissions and produce documents." *Taggart*, 2016 WL 4076818, at *4.[7] Taggart also fails to clearly plead facts establishing

---

[7] Our Court rejected Taggart's nearly identical claim against MERS in 2016. *Taggart*, 2016 WL 4076818, at *5 ("MERS . . . do[es] not have any claims of any interest in the property at all, and thus a quiet title action against [it] is inappropriate. MERS's interest in the property ended when it assigned that interest to Deutsche Bank, and MERS has never claimed an interest subsequent to that assignment."). Moreover, *res judicata* likely bars this claim because it is based on Taggart's

12

that any Defendant, other than Deutsche Bank, claims any interest in his property

whatsoever.[8]  The state court entered summary judgment in favor of Deutsche Bank in

the foreclosure proceeding and the non-Deutsche Bank Defendants expressly deny any

interest in the property.  Thus, there is no cloud on Taggart's title and his quiet title

claims are all dismissed.

D

Taggart's slander of title claims against each Defendant fare no better.  Slander

of title is the "false and malicious representation of the title or quality of another's

interest in goods or property."  *Narducci v. Regis Dev. Corp.*, 2005 WL 1620379, at *1

(Pa. Com. Pl. July 7, 2005) (*quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper

Co.*, 809 A.2d 243 (2002)).  Nowhere in his confused and conclusory Amended

Complaint does Taggart specify any allegedly false and malicious representations about

his property.[9]  And to the extent Taggart bases his claims on representations

Defendants made in the state court, the absolute privilege for statements made in the

course of litigation protects them.  *See Triester v. 191 Tenants' Ass'n*, 415 A.2d 698, 702

(Pa. Super. Ct. 1979).

Taggart's failure to state a claim for slander of title is made worse by the fact

---

theory that MERS's assignment of the mortgage was invalid, an issue essential to the state court's summary judgment. *See Williford*, 2018 WL 451644, at *3 ("The determination that the assignments were valid was also essential to the mortgage judgment.").

[8] At oral argument, the Court gave Thomas an opportunity to identify facts in the Amended Complaint supporting these claims.  (April 22 Hr'g Tr. 40:1–4, 15–18.)  He could not do so.  *See, e.g.*, (*id.* at 45:21–23, 46:9–48:13).  If counsel, who purportedly drafted the Amended Complaint, struggled to identify relevant factual allegations supporting his claims, one can imagine the Court's difficulty.

[9] The Court also asked Thomas to identify facts supporting these claims at oral argument. (April 22 Hr'g Tr. 74:22–25.)  Again, he could not. *See e.g.*, (*id.* at 78:20–21, 79:15–20) (Thomas identified allegations about allegedly false state court testimony from SLS employees).

that he and Thomas know better.  Several times in the last few years, courts in this Circuit have concluded that Taggart—represented by Thomas—failed to state facts supporting a slander of title claim.  *See, e.g.*, *Taggart*, 2016 WL 4076818, at *5; *Taggart v. Wells Fargo Bank, N.A.*, 723 F. App'x 127, 129 (3d Cir. 2018).  Because it is clear Taggart cannot support these claims, they are dismissed with prejudice.

E

Taggart next claims Deutsche Bank breached its contract by failing to provide necessary documents and follow proper procedures in accelerating the amount owed on his note and mortgage and by seeking foreclosure.  (Am. Compl. ¶ 280(a)–(n).)  Deutsche Bank moves to dismiss because Taggart bases this claim on events that occurred in 2010 and the statute of limitations for a breach of contract claim in Pennsylvania is four years.  *See* (Deutsche Bank Mot. to Dism. 15) (citing 42 Pa.C.S. § 5525(a)(1)).  Taggart, without explanation or legal support, disputes this position and argues only that if the statute of limitations bars his breach of contract claim, then that same statute of limitations bars Deutsche Bank's foreclosure action.  (Taggart Resp. to Deutsche Bank 24, ECF 31.)  Not so.  First, even if Taggart's musing about the applicability of this statute of limitations to Deutsche Bank's foreclosure action were correct (it is not), the Court lacks jurisdiction to interfere with a state court action in the way Taggart suggests it should.  Second, and more important, Deutsche Bank is correct—Pennsylvania's four-year statute of limitations bars Taggart's breach of contract claim based on alleged conduct from 2010.  *See* 42 Pa.C.S. § 5525(a)(1).  To the extent Taggart supports this claim with allegations that occurred within the statute of limitations, *res judicata* bars the claim as explained in Section III.B.  This claim is also

14

dismissed with prejudice.

F

Taggart's claims that Deutsche Bank, SLS and Stern & Eisenberg failed to comply with mortgage protections also fail.  He contends these Defendants failed to take appropriate action in response to his loss mitigation application.  Such an application typically triggers certain obligations for a loan servicer to ensure it provides a mortgagor loss mitigation opportunities.  In October of 2020, Taggart submitted what could be construed as a proposed settlement loan modification offer.  *See* (Am. Compl. Exh. V).  SLS acknowledged receipt of that document and provided Taggart a Request for Mortgage Assistance application and a letter explaining he must return the completed form by December 3, 2020.  (Deutsche Bank Mot. to Dism, Exh. 4.)  Returning that application would have triggered the protections Taggart claims Defendants denied him.  *See* 12 C.F.R. § 1024.41(c)(1).  Taggart did not return the application despite SLS's follow-up efforts urging him to contact SLS to discuss loss mitigation.  (Deutsche Bank Mot. to Dism, Exh. 5.)  Taggart's claims ignore this fact. He alleges Deutsche Bank, via SLS, "has not even provided an application [ ] for consideration."  (Am. Compl. ¶ 11.)  The documents attached to Deutsche Bank's Motion contradict that claim.[10]  Accordingly, the Court dismisses Taggart's foreclosure

---

[10] "In deciding motions under Rule 12(b)(6), courts may consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (internal quotations and citations omitted).  Here, the documents Defendants provide are integral to Taggart's Amended Complaint because his claims depend on whether he submitted a loss mitigation application and whether Defendants responded appropriately.

protection claims against Deutsche Bank and SLS with prejudice.

Taggart's identical claim against Stern & Eisenberg fails for the same reasons and because, as counsel for Deutsche Bank, it is immune from suit. *See Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. Ct. 1984) ("Where an attorney represents a client in litigation or during arms length negotiations, the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients."). Taggart fails to state a plausible claim that Stern & Eisenberg acted with anything but good faith in litigating the foreclosure action. Indeed, it would be impossible to do so now that the state court entered judgment for Deutsche Bank in that proceeding, vindicating Stern & Eisenberg's representation.

Taggart's mortgage protection claims against Deutsche Bank and Stern & Eisenberg also fail because 12 C.F.R. § 1024.2 applies only to a loan servicer, or "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. § 1024.2. "Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan . . . and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required." *Id.* Taggart does not allege that Deutsche Bank and Stern & Eisenberg are

loan servicers, so he cannot maintain Counts 13 through 15[11] against them.[12]

G

In Counts 16, 17, 18, 19, 21 and 23 Taggart claims Deutsche Bank, SLS and Stern & Eisenberg violated the FDCPA. He contends Deutsche Bank and SLS violated the Act by failing to properly respond to his June 26, 2018 request to verify his debt. (Am. Compl. ¶ 301, 307.) He also alleges SLS violated the Act by contacting him when it knew he was represented by counsel and by contacting him at prohibited times. (*Id.* at ¶¶ 168, 180, 181, 310–12.) Stern & Eisenberg allegedly violated the Act by not responding to his May 6, 2020 debt verification request. (*Id.* at ¶¶ 317, 318, Exh. N); *see* (Deutsche Bank Mot. to Dism., Exh. 6).

"The FDCPA prohibits debt collectors from making false, deceptive, or misleading representations to collect a debt." *Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d 618, 621 (E.D. Pa. 2017) (citing 15 U.S.C. § 1692(e)). "A claim under the FDCPA 'may be brought . . . within one year from the date on which the violation occurs.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 148 (3d Cir. 2012) (quoting 15 U.S.C. § 1692k(d)). The statute of limitations bars Taggart's claims against Deutsche Bank and SLS regarding his debt verification requests in June of 2018 because he waited until October 1, 2020 to file this suit in the Bucks County Court of Common

---

[11] Counts 14 and 15 both assert claims against Stern & Eisenberg for failure to comply with mortgage protections. In Count 15, Taggart adds one paragraph purporting to assert a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, but the other paragraphs of Count 15 mirror Count 14.

[12] Again, Thomas ought to know better by now. In 2016, another court in this Circuit dismissed similar claims under 12 C.F.R. § 1024.2 because Thomas tried raising them against non-servicers. *Bounasissi v. New York Life Ins. And Annuity Corp.*, No. 15-cv-7585, 2016 WL 4697333, at *2 (D.N.J. Sept. 6, 2016).

Pleas.  (Am. Compl. ¶¶ 301, 307.)  And to the extent Taggart bases his FDCPA claims on the state court foreclosure action, the statute of limitations bars those claims as well. Deutsche Bank initiated that case on October 1, 2018.  "When a FDCPA claim is based on a defendant's allegedly improper pursuit of litigation to collect a debt, the FDCPA's one-year statute of limitations accrues at the latest when the plaintiff is served with process."  *Walker*, 269 F. Supp. 3d at 621.  Since Taggart was served in the state court action before October 1, 2019, the one-year statute of limitations bars any FDCPA claim based on that case.  *See Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Proof of Service, Dkt. No. 2.

Taggart's FDCPA claim against Stern & Eisenberg also fails.  Taggart alleges Stern & Eisenberg failed to verify his debt in response to his May 6, 2020 request.  (Am. Compl. ¶¶ 150, 317–21, Exh. L.)  Unsurprisingly, that claim is verifiably false.  Stern & Eisenberg responded in detail on June 5, 2020.  (Deutsche Bank Mot. to Dism., Exh. 6.) To the extent Taggart acknowledges this response but believes it was nonresponsive, he fails to plead facts explaining the June 5 letter's deficiencies.  *See* (April 22 Hr'g Tr. 94:8–9, ECF 50).  Accordingly, this claim is dismissed with prejudice.

Taggart attempts to raise several other FDCPA claims against SLS.  He claims SLS violated the FDCPA by repeatedly calling him in relation to his mortgage debt— when it knew he was represented by counsel—in violation of 15 U.S.C. § 1692c(a)(2). He also contends that SLS called him at specific times after he notified it not to call at those times.

To state a claim for relief under the FDCPA, Taggart must plausibly allege that (1) he is a consumer, (2) SLS is a debt collector, (3) SLS attempted to collect a debt, and

(4) SLS violated the FDCPA in its attempt to collect the debt.  *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018).  Each of Taggart's FDCPA claims fail because he does not plausibly allege that SLS is a debt collector.  "The FDCPA provides two alternative definitions of a debt collector: (1) any person 'who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' (the 'principal purpose' definition), or (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another' (the 'regularly collects' definition)." *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 632 (E.D. Pa. 2019).  Taggart baldly asserts SLS "regularly engages in the collection of debt and is a 'Debt Collector' as defined under 1692(a) of the FDCPA."  (Am. Compl. ¶ 171.)  That bare accusation is insufficient to establish that SLS is a debt collector under the FDCPA. *See Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) (affirming dismissal of FDCPA claim where plaintiff alleged defendant was debt collector "by quoting the relevant definition from the FDCPA"); *Machles v. McCabe, Weisberg & Conway, P.C.*, No. 17-1015, 2017 WL 5172516, at *3 (E.D. Pa. Nov. 7, 2017) (same).

Taggart's § 1692c(a)(2) claim fails for an additional reason.  Section 1692c(a)(2) provides, "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt."  15 U.S.C. § 1692c(a)(2).  A "communication" is "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  To obtain relief under § 1692c(a)(2), "a

communication needs to be in connection with the collection of a debt." *Vilinsky v.*
*Phelan Hallinan & Diamond, PC*, 640 F. App'x 139, 141 (3d Cir. 2016).  Taggart
conclusorily states SLS contacted him "in an attempt to collect the alleged debt" and
attaches a call log to his Amended Complaint showing SLS called him.  (Am. Compl.
¶ 180); (*Id.*, Exh. P.)  Without more, the Court cannot conclude "that this can be
classified as collection activity."  *Vilinsky*, 640 F. App'x at 142.  The Court dismisses
this claim as well.

H

Next, Taggart alleges Defendants violated the Fair Credit Extension Uniformity
Act ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection
Law ("UTPCPL").  "The enforcement provision at Section 2270.5 of the FCEUA provides
'[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or
practice under this act, it shall constitute a violation of the [UTPCPL].'"  *Kern v. Lehigh*
*Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015) (quoting 73 P.S. § 2270.5).
Because of this relationship between FCEUA and UTPCPL claims, a plaintiff alleging
violations of these Acts "must plead an ascertainable loss resulting from justifiable
reliance on the defendant's conduct in order to survive a Rule 12(b)(6) motion."  *Hall v.*
*Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 811 (E.D. Pa. 2016) (citing *Kern*, 108
A.3d 1281).  Justifiable reliance occurs when a defendant's conduct induces a plaintiff
to act "or engage in any other detrimental activity."  *Hunt v. U.S. Tobacco Co.*, 538 F.3d
217, 227 (3d Cir. 2008).  To allege ascertainable loss, a plaintiff must "plead
facts . . . point[ing] to money or property that he would have had but for the defendant's
[deceptive] actions."  *Hall*, 204 F. Supp. 3d at 811 (citation and quotation marks

20

omitted) (alteration in original).

Taggart does not plead justifiable reliance or ascertainable loss.  At oral argument, Taggart contended that he "rel[ied] on the Defense to respond to a settlement offer that they made and that we responded to."  (April 22 Hr'g Tr. 95:2–3.) But this alleged reliance comes up short because Taggart "has not alleged that [Defendants'] deception induced him to [act] or engage in any other detrimental activity."  *Hunt*, 538 F.3d at 227.  In other words, the Court is left "guessing as to how his knowledge that" Defendants would not respond to his settlement inquiries "would have changed his conduct."  *Id.*  And his passing reference to having "suffered an ascertainable loss as a result of Defendant's actions" is conclusory and cannot support his claims.  (Am. Compl. ¶¶ 339, 357, 375.)  At oral argument, he claimed his loss included "damaged credit" and "damaged title."  (April 22 Hr'g Tr. 96:3–4.)  But, even assuming those injuries would constitute ascertainable loss, Taggart does not plead them in the Amended Complaint.  These claims are dismissed.

I

Finally, in Counts 25 through 27 Taggart employs another of his shopworn tactics for challenging the conduct of anyone who dare try to make him pay his mortgage.  He claims Deutsche Bank, SLS and Stern & Eisenberg committed fraud by filing false pleadings in the state court foreclosure proceeding.  *See* (Am. Compl. at ¶¶ 380–81, 384–85, 388–89); *see also Taggart v. Saltz*, No. 20-cv-1638, 2020 WL 5943728 (E.D. Pa. Oct. 7, 2020) (claiming Wells Fargo and its attorneys committed fraud on the court in related state court proceedings).  Although he does not specify in each Count the conduct he believes was fraudulent, the Court assumes that Taggart

21

intends to support these claims with his scattershot allegations throughout the

Amended Complaint. *See* (Deutsche Bank Mot. to Dism. 21–22) (citing numerous

provisions in Amended Complaint arguably supporting fraud claims). The Third

Circuit "employ[s] a demanding standard for independent actions alleging fraud upon

the court requiring: (1) an intentional fraud; (2) by an officer of the court; (3) which is

directed at the court itself; and (4) that in fact deceives the court." *Herring v. United

States*, 424 F.3d 384, 390 (3d Cir. 2005). The fraud must be "egregious

misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel."

*Id.* (citation omitted).[13]

Taggart comes nowhere near this demanding standard. Each of his allegations

are, at best, arguments why Deutsche Bank should have lost in state court. For

example, he claims: Deutsche Bank failed to properly provide pre-foreclosure notices

(Am. Compl. ¶ 94); Deutsche Bank's complaint did not contain an itemized statement of

the amount due (*id.* at ¶ 87); improper joinder (*id.* at ¶ 90); and several other reasons

why he thinks he should have won in the foreclosure action. Taggart's allegations are

conclusory and do not rise to the level necessary to allege a fraud on the court.

IV

Taggart seeks leave to amend his Amended Complaint. "[A] district court must

permit a curative amendment, unless an amendment would be inequitable or futile."

*Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). "Dismissal without

---

[13] Again, Taggart and Thomas know all of this already. In 2017, the Court laid out this standard and rejected Taggart's fraud on the court claims as conclusory. *Taggart v. United States Dep't of Justice*, No. 16-cv-4040, 2017 WL 319062, at \*9 (E.D. Pa. Jan. 20, 2017).

leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).  The Court will not grant leave to amend because Taggart and Thomas have shown bad faith and a dilatory motive throughout this case, amendment would be inequitable and, for most of the Counts in the Amended Complaint, futile.  Taggart has already amended once and this is his third case in our Court involving the Heron Road property.  He has repeatedly failed to state plausible claims for relief—despite our Court's and the Third Circuit's guidance—and the convoluted, scattershot nature of his Amended Complaint gives the Court no confidence that a Second Amended Complaint would be any better.  Not to mention, this case is just the latest avenue for Taggart to dodge his mortgage payments.  For years, Taggart has attempted to avoid those payments through litigation.  Finally, Deutsche Bank secured judgment in the state court requiring him to pay.  If, at this point, subjecting the Defendants to another go-round with Kenneth Taggart and Joshua Thomas isn't inequitable, nothing is.

V

Taggart has flooded our Court's docket with baseless lawsuits for over a decade. In Joshua Thomas he has found a lawyer who enables his worst instincts and tendencies.  This Court, others in the Circuit, and the Third Circuit Court of Appeals itself, have reprimanded and sanctioned Thomas in recent years.  Just last year, Judge Wolson detailed the five instances when Thomas faced sanctions in the District of New Jersey and the one prior sanction Thomas received from our Court before he also sanctioned Thomas.  *Jacovetti Law, P.C.*, 2020 WL 1491320, at *3–7.  And earlier this year, Judge Hardiman, writing precedentially for the Third Circuit, sanctioned Thomas

under Rule 38 of the Federal Rules of Appellate Procedure for a "copy-and-paste"

appeal" in which he "recycle[ed] meritless arguments without engaging the District

Court's analysis." *Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 158 (3d

Cir. 2021).  Somehow none of these recent sanctions have gotten through to Thomas.[14]

A

On April 28, the Court ordered Thomas to show cause why the Court should not

sanction him under Rule 11 and its inherent authority.  (ECF 52.)  Among other things,

the Court ordered Thomas to explain why several significant pleading deficiencies, his

practice of ignoring Court deadlines, his apparent lack of discretion and diligence in

filing pleadings and his false statements to the Court about the suspension of his bar

license do not warrant sanctions.  (*Id.*)  Thomas responded on May 7, addressing each

point in the Court's Order.  (ECF 54.)  The Court then held a Show Cause Hearing on

May 26.  (ECF 58.)

B

Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable

inquiry into the factual and legal bases of all claims before filing any document with the

court.  *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551

(1991); *see also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d

Cir. 1994).  The Rule provides in relevant part:

(b) Representations to the Court. By presenting to the court a pleading,

---

[14] One would think that being taken to task in a precedential opinion from the Third Circuit Court of Appeals would make an impression on a lawyer who regularly practices here.  Not so with Thomas.  When confronted for employing similar cut and paste tactics here and being asked if Judge Hardiman reacted casually to such a practice, Thomas said, "I don't know Judge Hardiman, who you're referencing, Your Honor."  (April 22 Hr'g Tr. 101:17–102:2.)

24

written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED. R. CIV. P. 11(b)(1)–(3).  A court may, *sua sponte*, order an attorney to show cause why certain conduct does not violate Rule 11.  FED. R. CIV. P. 11(c)(3).

"Among the implied and incidental powers of a federal court is the power to discipline attorneys who appear before it."  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) (citations and quotation marks omitted).  The Court may exercise its authority to impose sanctions when it determines that, in the course of litigation, an attorney "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 189 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).  "Generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists."  *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995).

## C

In sanctioning Thomas last year, Judge Wolson found that he lied to the Court under oath.  *Jacovetti Law, P.C.*, 2020 WL 1491320, at \*1, 3.  In another case last year, Judge Frank ordered Thomas to show cause why he should not be held in contempt for

filing schedules in a bankruptcy proceeding that were identical to schedules he had filed in an earlier bankruptcy. *In re Thomas*, 612 B.R. 46, 49 (Bankr. E.D. Pa. 2020). Thomas blamed the identical schedules on an oversight, but Judge Frank did not believe him and concluded that Thomas acted intentionally. Judge Frank said Thomas's conduct "must be characterized as a conscious disregard of his most basic duties as an attorney" and "evidence[d] a distinct lack of concern for the integrity of the bankruptcy system." *Id.* at 67–68.

Here, Joshua Thomas lied, repeatedly, to the Court at oral argument on Defendants' Motions to Dismiss. The proceeding had an inauspicious beginning—and went downhill from there. Defense counsel stated he learned that Thomas's Pennsylvania bar license was administratively suspended on April 16, 2021, six days before the argument. Thomas never told his client, opposing counsel or the Court of this suspension, despite a clear directive from the Disciplinary Board of the Supreme Court of Pennsylvania to do so. When confronted about it, Thomas explained that he was notified in a March 17 letter that he would be administratively suspended on April 16 if he did not complete annual CLE requirements. (April 22 Hr'g Tr. 6:20–24.) He assured the Court that he had resolved the issue by completing and submitting the required CLE documents earlier that week. (*Id.* at 6:12–16) ("As of today, the CLEs were—or I should say as of the beginning of the week, the CLEs were complete and I was told that that would mean that I can continue to practice . . . ."); (*id.* at 7:5–8) ("There's a notice saying that if you don't finish your CLEs by this time, we're going to actually put the order into effect. The CLEs were completed, and as of this time, they should no longer apply."); (*id.* at 8:19–24) ("The order said that this would not actually

be released if all the CLEs were completed within I believe it might have been a 30-day period or whenever the date was.  I don't have it in front of me.  The CLEs were submitted."); (*id.* at 13:2–5) ("Again, it's a CLE issue, your Honor, and it shouldn't actually have gone into effect.  Again, it was from March 17th.  The CLEs were submitted.  I don't know why they weren't applied.").

Based on these representations, the Court allowed Thomas to represent Taggart at oral argument, requiring him to subsequently provide proof that he had cured the issue with his bar license.  (*Id.* at 13:6–14:6) (assuring the Court that he would provide proof that he had submitted the CLE documents); (*id.* at 15:14–16).  Thomas never provided that proof and the Court now understands why—there wasn't any.  And there wasn't any because Thomas had not done what he told the Court he had.[15]

After Thomas submitted his Response to the Order to Show Cause, the Court contacted the Office of Disciplinary Counsel to inquire into the status and circumstances of Thomas's administrative suspension.  That Office informed the Court it had no knowledge of Thomas submitting any required documentation before the oral argument.  In fact, Thomas satisfied his requirements on April 27, five days *after* the argument.  The Pennsylvania CLE Board then certified his compliance with the Attorney Registrar.  The Attorney Registrar emailed Thomas the requirements for reinstatement and provided the necessary forms.  On May 3, Thomas paid the $300 reinstatement fee to the Attorney Registrar and provided a Statement of Compliance, thereby restoring his license to active status.  Thomas did not explain any of this in his

---

[15] The day after oral argument, the Court learned from the Pennsylvania Office of Disciplinary Counsel that Thomas remained administratively suspended because he had not submitted proof that he completed the required CLEs or paid three late fees.

Response to the Order to Show Cause.  Instead, he qualified his Response on this point, saying, "I made sure to try and be as candid with the matter as possible with the court." (Resp. to Order to Show Cause 22.)  And he told the Court that his license is no longer administratively suspended.  (*Id*.)  But he did not explain that he had not submitted anything until April 27 or that he had not fully cured the defect until May 3.

At the Show Cause Hearing, the Court pressed Thomas on this issue.  He explained that "[t]he CLEs had been completed" on April 22, but that he had not submitted them.  (Show Cause Hr'g Tr. 63:11–14.)  Thomas blamed his failure to cure his suspension on a misunderstanding regarding his obligation to submit the CLEs after he completed them.  (*Id*.)  But at the oral argument on the Motions to Dismiss, Thomas told the Court several times that he had *submitted* his CLEs, not merely completed them.  (April 22 Hr'g Tr. 8:8–10, 8:19–24, 9:17–18, 13:2–5.)  When asked whether he understood that his statements, made under oath at the Show Cause Hearing, "directly contradict[]" what he said at the April 22 oral argument, Thomas said "[y]es."  (Show Cause Hr'g Tr. 63:15–18.)

Pennsylvania Rule of Professional Conduct 3.3 imposes on attorneys a duty of candor to courts.  But "[a]n attorney's duty of candor to the Court is not limited to Rule 3.3.  Rather, '[e]ven beyond the requirements of Rule 3.3[], an attorney, as an officer of the Court, has an overarching duty of candor to the Court.'"  *In re Grasso*, 586 B.R. 110, 162 (Bankr. E.D. Pa. 2018) (quoting *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 790 (E.D. Pa. 1994)).  Thomas violated his duty of candor at the April 22 hearing when he claimed he had submitted the required CLEs and cured the defects causing his administrative suspension.

28

D

The Court also ordered Thomas to show cause why it should not sanction him for repeatedly missing Court deadlines.  Thomas's conduct in this case and others suggests that he views Court deadlines as optional or that he is incapable of understanding and following even the most basic rules governing the practice of law in the federal courts. Ten days after Defendants moved to dismiss the Complaint, Thomas asked for an extension to respond, citing the Christmas holiday and, ironically, Defendants' "voluminous filings."  (ECF 13.)  He noted that the Court had extended the deadline for Defendants to respond to the Complaint.  (*Id.*)  Curiously, he referenced January 11 as the due date for his responses.  But because Defendants moved to dismiss on December 21, Taggart's responses were due January 4.[16]  *See* LOCAL RULE OF CIV. P. 7.1(c) (responses to motions due within 14 days).  The Court denied the motion because Thomas had not promptly shown a compelling reason for the extension in accordance with the Court's policies and procedures and because he had not conferred with defense counsel regarding the extension.  (ECF 14.)  On January 6, two days after his deadline to respond, Thomas renewed his motion for an extension to respond or to file an amended complaint.  (ECF 15.)  He included 38 rambling paragraphs referencing purported settlement negotiations and claims against Defendants.  (*Id.*)  Because Thomas filed this motion after his deadline to respond and failed to cure the prior motion's defects, the Court denied this one as well.  (ECF 16.)  On January 11, Thomas

---

[16] At the Show Cause Hearing, Thomas explained that he erroneously set up 21-day deadlines for responding to these Motions.  (Show Cause Hr'g Tr. 43:17–21.)  This mistake is inexcusable given that our Court recently admonished Thomas for flouting deadlines.  *See Jacovetti Law, P.C.*, 2020 WL 1491320, at *1–2, 5–7.

filed an Amended Complaint.  (ECF 17, 18, 20.)

As explained in Section I, Wells Fargo moved to dismiss the Amended Complaint on January 29.  (ECF 24.)  Thomas responded one week after the deadline.  (ECF 26.)  Deutsche Bank, SLS, MERS and Stern & Eisenberg moved to dismiss on February 4.  (ECF 25.)  Nineteen days later, Thomas moved for an extension of time to respond and to exceed the Court's page limitation in his filing.  (ECF 27.)  Specifically, he asked for an 11-day extension until March 8.  (*Id.*)  But his deadline to respond was February 18, so an 11-day extension would have extended the deadline only until March 1.  The Court denied the motion, (ECF 29), and Thomas responded on February 25, one week after the deadline.  (ECF 31.)

The Court asked Thomas about these missed deadlines at oral argument.  He attributed his untimely filings to "calendaring error[s]."  (April 22 Hr'g Tr. 108:2–5, 109:3–5.)  In his Response to the Order to Show Cause, Thomas reiterates this position and says he fixed the issue.  (Resp. to Order to Show Cause 21.)  At the Show Cause Hearing, Thomas explained that he mistakenly set 21-day deadlines for responding to motions in federal court.  (Show Cause Hr'g Tr. 43:17–21.)  He acknowledged that his practice of missing deadlines is "clearly a problem," (*id.* at 46:17), and he said, "it just seems to be an issue where I don't handle the deadlines properly," (*id.* at 49:1–2.)

Given Thomas's history and pattern of missing deadlines, his explanation that he mistakenly set 21-day deadlines to respond to the Motions in this case comes up short.  When Judge Wolson sanctioned Thomas last year, he cited Thomas's practice of disregarding deadlines in that case and others.  *Jacovetti Law, P.C.*, 2020 WL 1491320, at *1–2, 5–7.  Thomas's failure to grasp the importance of complying with Court

30

deadlines after his experience with Judge Wolson and other courts is unacceptable,
especially for an attorney who frequently practices before our Court.  And his
"calendaring error" reveals an unfamiliarity with one of this Court's most basic rules.
LOCAL RULE OF CIV. P. 7.1(c).  Ignorance of this rule is inexcusable and knowingly and
repeatedly disregarding it is worse.  Thomas acted in bad faith by missing nearly every
deadline in this case.

E

Normally an attorney's spelling and grammatical mistakes and a pleading's
general lack of cogency would not be grounds for sanction.  After all, attorneys (and
judges) make mistakes now and again.  But Thomas's errors go beyond excusable
neglect or mistake.  The Amended Complaint contains countless typographical and
spelling errors and highlights Thomas's inability to consistently put together a coherent
sentence.  It also lacks any semblance of logical organization or clarity.  These errors
doubtless resulted in Defendants spending more time and resources than normal
crafting their Motions to Dismiss.  They certainly caused the Court headaches as it
tried to decipher Taggart's claims.  The volume and severity of Thomas's errors in the
Amended Complaint demonstrate a complete lack of diligence and a failure to proofread
or consider the foundations of his factual and legal assertions.

One great example comes from Paragraph 31 of the Amended Complaint:

> Defendant's, Deutsche Bank, Specialized Loan Servicing LLC, and Stern &
> Eisenberg, Fraudulent filings with the court, fraud –on-the court, and fraud
> committed against Taggart for their proffering knowingly false affidavits,
> pleadings in court, filing of fraudulent documents, and proffering
> fraudulent documents to Taggart.

(Am. Compl. ¶ 31.)  The Amended Complaint also includes many rambling, seemingly

out-of-place allegations.  Take Paragraph 105:

> Taggart's rescission claims are notwithstanding any and all other claims
> made by Taggart in this complaint that Deutsche Bank lacks 'Standing' to
> file claims based on the lack of ownership, chain of title and provenance of
> the mortgage and note evincing ownership, the failure to meet conditions
> precedent by providing pre-foreclosure notices of 'Notice of Intent to
> Foreclose', 'Notice of Intent to Accelerate', pursuant to the mortgage and
> note and Act 91', as well as any and all other claims as made in this
> complaint and defenses raised, and new matter as pled in the 3rd
> Foreclosure Complaint.,

(Am. Compl. ¶ 105) (errors in original).  The Court asked Thomas at oral argument

whether he intended to advance a rescission claim.  He answered in the affirmative, but

none of the Counts in the Amended Complaint discuss or raise any claims related to

rescission.

Thomas also consistently mislabels the parties throughout much of the Amended

Complaint and recycles, without bothering to edit them, paragraphs from his filings in

the state court foreclosure case.[17]  By the Court's count, he refers to his client as

"Defendant" or to a Defendant as "Plaintiff" in 20 paragraphs and a footnote.  (Am.

Compl. ¶¶ 15–17, 29, 79, 104, 107, 114, 115, 117, 118, 122, 130, 132–34, 138, 140, 142,

146, fn. 3.)  And, as discussed in Section I, he argues that Bucks County is the proper

venue and state court the proper forum for some of his claims.  (*Id.* at ¶¶ 197, 208.)

---

[17] When the Court asked Thomas at oral argument whether he had copy and pasted
paragraphs from his pleadings in state court into Taggart's Amended Complaint, he denied doing so.
*See, e.g.*, (April 22 Hr'g Tr. 103:7–13, ECF 50).  A comparison of his state court pleadings and the
Amended Complaint reveals several identical paragraphs. *Compare, e.g.*, (Am. Compl. ¶ 118) *with*
(Deutsche Bank Mot. to Dism., Exh. 2 at 21–22, ECF 25-4).  The Court ordered Thomas to show
cause why he should not be sanctioned for lying to the Court about copy and pasting these
paragraphs from the state court pleadings into his Amended Complaint.  In his Response and at the
Show Cause Hearing, Thomas admitted to recycling these paragraphs.  (Resp. to Order to Show
Cause 21; Show Cause Hr'g Tr. 52:1–4.)

These are not minor oversights.  They evince a pervasive lack of diligence and attention to detail in Thomas's pleadings that harms his client, his opponents and the Court.

In his Response to the Order to Show Cause, Thomas blames his sloppy pleadings on being a sole practitioner, an old saw which should offend sole practitioners everywhere.  And Thomas's assurance that he "will make sure *when possible to attempt* to proofread . . . in a much better fashion" says it all and shows he still doesn't get how far below professional standards his Amended Complaint falls.  (Resp. to Order to Show Cause 22) (emphasis added).  Thomas walked back this half-hearted assurance at the Show Cause Hearing, (Show Cause Hr'g Tr. 58:16–23), but his explanation for the Amended Complaint's many errors did little to ease the Court's concerns.

F

The Court also ordered Thomas to show cause why his Motion for Injunctive Relief on his quiet title claims is not sanctionable.  The Motion mostly rehashes arguments in the Amended Complaint and Taggart's Responses to Defendants' Motions to Dismiss.  In that way, it is effectively a sur-reply to the Motions.  The final three pages address the balancing test the Court must employ to determine whether a preliminary injunction is warranted.  Thomas says Taggart is likely to succeed on the merits of his quiet title claims because prior assignments of the note and mortgage are invalid and Deutsche Bank cannot show it owns the note and mortgage.  *See* (Mot. for Inj. Rel. 10–13).  And he says Taggart will suffer irreparable harm if the Court does not grant the Motion and enjoin a foreclosure sale.  (*Id*. at 14.)  In his Response to the Order to Show Cause, Thomas reiterates his position that Deutsche Bank lacks a valid claim to the mortgage and that the assignments of the mortgage were invalid.  (Resp. to

33

Order to Show Cause 20.)  At the Show Cause Hearing, Thomas argued that he was not seeking to upset the state court judgment.  (Show Cause Hr'g Tr. 37:15–17.)  Instead, he said he was attempting to "clarif[y]" the "chain of assignments" before the foreclosure sale.  (*Id.* at 37:11–14.)  That explanation notwithstanding, his Motion explicitly requests an injunction halting the foreclosure sale.  (Mot. for Inj. Rel. 15.)

This is just more nonsense and is a patently transparent attempt to circumvent the state court's foreclosure judgment.  "In order to prevail on a foreclosure claim in Pennsylvania, a plaintiff must establish, among other elements, 'the parties to and date of the mortgage, and of any assignments.' 231 Pa. Code § 1147(a)(1)  Moreover, a foreclosure judgment necessarily includes a finding that the mortgage was valid, and that the mortgage holder who is the plaintiff in a foreclosure action has standing to foreclose." *Williford*, 2018 WL 451644, at *3.  In other words, entering summary judgment required the state court to recognize the validity of Deutsche Bank's interest in the mortgage and the validity of the chain of assignments between it and Decision One Mortgage.  *See id.*  "[I]f [Deutsche Bank] had been unable to meet its burden of proof on that issue, it would not have been entitled to summary judgment." *Id.*  Given the state court's conclusion in the foreclosure action, Taggart's claims clearly lack merit.

Thomas's argument about irreparable harm is similarly meritless. He contends that if the Court does not grant the Motion, Taggart risks losing his home in a foreclosure sale.  This argument reveals Taggart's strategy of collaterally attacking the state court foreclosure judgment in this case.  Taggart and Thomas have appealed the state court's foreclosure judgment and, if they are successful, will avoid the harm cited

in the Motion for Injunctive Relief.  That avenue for relief obviates the need for the Court's intervention.

Thomas has tried this before.  In *Bounasissi v. New York Life Ins. And Annuity Corp.*, No. 15-cv-7585, 2016 WL 852483, at *1–2 (D.N.J. Mar. 4, 2016), he sought emergency injunctive relief to stay his client's imminent eviction pursuant to a two-year-old foreclosure judgment.  Thomas relied on one of his go-to arguments to justify that motion—he claimed he could not assert the arguments raised in federal court in the foreclosure action.  *Id.* at *2.  He recycles that argument here, saying he could not have raised his quiet title claims in the foreclosure action.  But his legal theory supporting the quiet title claims here mirror those in the state court foreclosure action—he says Deutsche Bank lacks a valid claim to the mortgage and that the assignments of the mortgage were invalid.  By asking the Court to address these arguments on an emergency basis, Thomas is effectively seeking expedited appellate review of the state court foreclosure judgment in federal court.[18]  The Court will not entertain such requests and, because this is not Thomas's first rodeo, the Court concludes that Thomas violated Rule 11(b)(1) by bringing this Motion for the improper purposes of collaterally attacking a state court judgment and increasing the cost of litigation.

## G

In Count 2 of the Amended Complaint, Thomas raises a quiet title claim against

---

[18] At the Show Cause Hearing, Thomas erroneously argued that his Motion could not be construed as a collateral attack on the state court judgment because the "judgment [] hadn't been filed when that [M]otion was filed."  (Show Cause Hr'g Tr. 37:15–17.)  The state court entered summary judgment on March 15, 2021.  Thomas moved for injunctive relief two weeks later on April 1.

MERS.  (Am. Compl. ¶¶ 216–220.)  At no point in the Amended Complaint does he

acknowledge or grapple with the fact that our Court rejected that exact claim when he

raised it in *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, 2016 WL 4076818,

at *5 (E.D. Pa. Aug. 1, 2016).  In that case, Judge Smith concluded: "MERS . . . do[es]

not have any claim[] of any interest in the property at all, and thus a quiet title action

against [it] is inappropriate.  MERS's interest in the property ended when it assigned

that interest to Deutsche Bank, and MERS has never claimed an interest subsequent to

that assignment."  *Id.*  The Court dismissed the claim without prejudice.  When asked

about the 2016 case at oral argument, Thomas could not remember whether he had

been involved, then provided non-responsive answers regarding the similarities

between Count Two and the claim against MERS in that case.  (April 22 Hr'g Tr. 36:19–

38:13.)  In his response to the Order to Show Cause, Thomas correctly notes that the

court dismissed the claim without prejudice in 2016, which does not bar him from re-

filing the claim.  But Thomas fails to explain how the claim is any different this time

around.  At the Show Cause Hearing, he argued that deposition testimony in the state

court foreclosure case supported Taggart's position that MERS lacked "authority to

create and record this assignment of mortgage."  (Show Cause Hr'g Tr. 7:23–25.)  But

Thomas's answer did nothing to address Judge Smith's conclusion that MERS,

regardless of whether it had authority to assign the mortgage, "has never claimed an

interest subsequent to that assignment."  *Taggart*, 2016 WL 4076818, at *5.  So,

although the 2016 dismissal does not preclude this claim, Thomas's decision to re-file it

without any factual support—just like in 2016—runs afoul of Rules 11(b)(1) and (2).  He

recycled this claim, barred by existing law, to harass, cause unnecessary delay and

needlessly increase the cost of litigation.

H

Next, the Court ordered Thomas to show cause why his failure to plead facts supporting Counts 1 through 10 was not sanctionable under Rule 11(b)(1) and (2) in light of repeated explanations from our Court and the Third Circuit regarding the requirements for pleading quiet title and slander of title claims. These Courts have schooled Thomas on several occasions regarding what it takes to adequately plead a claim for relief for quiet title and slander of title. He nonetheless continues to advance deficient claims for an improper purpose.

In each of Counts 1 through 5, Thomas explicitly requests that the Court order Defendants to proffer evidence regarding ownership of his property. But our Court has explained to Thomas that the quiet title statute "is not a license to force any person somewhat associated with a property transaction to answer a series of requests for admissions and produce documents." *Taggart*, 2016 WL 4076818, at *4. And, as explained in Section III.D, Courts in this Circuit have previously dismissed Thomas's slander of title claims for failing to allege facts supporting them. *See, e.g.*, *Taggart*, 2016 WL 4076818, at *5; *Taggart*, 723 F. App'x at 129. At the Show Cause Hearing, Thomas argued that, although Deutsche Bank is the only Defendant claiming an interest in his property, Taggart could pursue quiet title claims against the other Defendants to clean up the "chain of title." (Show Cause Hr'g Tr. 9:24–10:11.) But in affirming dismissal of quiet title claims in one of Taggart's prior suits, the Third Circuit explained that—to maintain a quiet title claim—Taggart must allege "specific facts" showing defendants "lay[] claim to his property." *Taggart*, 723 F. App'x at 129.

37

Thomas also admitted that the Amended Complaint does not plead facts establishing malice for Taggart's slander of title claims. (Show Cause Hr'g Tr. 19:23–25.) Malice, as the Third Circuit recently told Thomas and Taggart, is "a necessary element of slander of title." *Taggart*, 723 F. App'x at 129.

Thomas's repeated errors suggest more than excusable mistake or neglect. He has established a pattern of disregarding where it suits him unfavorable rulings or explanations from courts that contradict his erroneous view of the law. Counts 1 through 10 violate Rules 11(b)(1) and (2) because Thomas pled these claims for an improper purpose, they lack factual support and they have no basis in existing law.

I

Thomas asserts several claims in the Amended Complaint that are clearly barred by applicable statutes of limitations. Notably, he supports the breach of contract claim in Count 11 with conduct that occurred in 2010. (Am. Compl. ¶ 280(a)–(h).) He fails to recognize that this conduct occurred six years beyond the four-year statute of limitations and does not attempt to explain why any form of tolling could save these portions of his claim. Similarly, the FDCPA claim in Count 16 is based on a document from 2018, but the statute of limitations for FDCPA violations is one year. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (citing 15 U.S.C. § 1692k(d)).

In his Response to the Show Cause Order, Thomas cites 42 Pa.C.S. § 5529 as providing the applicable statute of limitations for his breach of contract claim. Section 5529 says there is a twenty-year statute of limitations in Pennsylvania for execution of a judgment against personal property. It says nothing about breach of contract claims. When asked at the Show Cause Hearing why he cited that statute, Thomas said, "I

can't tell you why we relied on that specific statute." (Show Cause Hr'g Tr. 23:6–7.) And when asked about his FDCPA claim at the Show Cause Hearing, Thomas erroneously said the statute of limitations for FDCPA claims is four years. (*Id.* at 32:17.)

Thomas's inclusion of these time-barred claims is illustrative of his broader approach to litigation—throwing everything at the wall to see what sticks. These claims violate Rules 11(b)(1) and (2) because they have no basis in existing law and the Court can conclude only that Thomas pled them for an improper purpose.

### J

Finally, the Court also ordered Thomas to show cause why his repeated allegation that Deutsche Bank is not the owner of the mortgage and note based on a competing claim from U.S. Bank does not violate Rules 11(b)(1) and (3). In Paragraphs 70 and 135 of the Amended Complaint, Taggart attacks Deutsche Bank's ability to foreclose on the Heron Road property based on a claim that U.S. Bank made about ownership of the mortgage and note in a prior case many years ago. But Thomas fails to mention at any point that our Court already addressed this issue in *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, another case involving the Heron Road property in which he served as Taggart's lawyer. There, the Court allowed Taggart's quiet title claims against Deutsche Bank and U.S. Bank to proceed to discovery based on the same allegations Thomas raises now. *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, 2016 WL 4076818, at *5 (E.D. Pa. Aug. 1, 2016). But as Thomas knows, when discovery showed that U.S. Bank never had a valid interest in the note and mortgage, the court dismissed those claims without prejudice for lack of subject

matter jurisdiction. *See Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, ECF 55. Because the court dismissed those claims without prejudice and did not make any explicit on-the-record findings regarding this allegation, the Court will not impose sanctions on Thomas for including it in the Amended Complaint.

K

In determining the appropriate sanctions, "the Court seeks the least significant sanction that will correct or deter similar conduct from Thomas in the future." *Jacovetti Law, P.C.*, 2020 WL 1491320, at *5. The Court is mindful of Thomas's prior conduct and the resulting sanctions but is not punishing him for those prior violations. "However, . . . Thomas's failure to change his ways[] demonstrate[s] that harsher sanctions are necessary to make the point." *Id.*

1

Thomas's conduct has undoubtedly led to inflated legal bills for his opponents. His Amended Complaint is difficult to follow and does not give his opponents clear notice of the claims against them. Considering the totality of his transgressions—lying to the Court, repeatedly missing deadlines, filing a baseless motion, advancing frivolous claims and exercising no diligence in crafting his pleadings—a $2,500 sanction to be paid into the Court's registry is appropriate. This is the Court's best effort at crafting a fair monetary penalty that will hopefully deter Thomas from continuing to practice law this way.

2

Thomas's lack of candor to the Court, his inability to craft a coherent pleading,

his decision to seek emergency injunctive relief, his failure to adequately investigate the merits of Taggart's case and his refusal to adhere to the Court's deadlines "call[] into question his competence to practice law." *Jacovetti Law, P.C.*, 2020 WL 1491320, at *5. Thomas must provide a copy of this Memorandum, the corresponding Order and the transcript of the Show Cause Hearing to the disciplinary committee for every state bar and every federal court to which he is admitted. He shall also provide these materials to all judges presiding over any pending proceeding in which he is involved—notably Judge Hillman in the District of New Jersey who just last year ordered Thomas to show cause why he should not be referred to the Chief Judge for discipline. *Edwards v. Wells Fargo Bank N.A.*, No. 19-cv-14409, ECF 7. A hearing on that order is currently scheduled for June 15. *Id.*, ECF 23. Thomas must then file a sworn statement and proof of delivery of these materials with the Court.

The Court will also forward this Memorandum Opinion and the accompanying Order to the Court's Disciplinary Committee for its review.[19]

## VI

When the Third Circuit sanctioned Thomas earlier this year, it rightly observed that "[t]he practice of law is challenging, and even the best lawyers make mistakes from time to time." *Conboy*, 992 F.3d at 158. The Court is privileged to have practice before it diligent, honest, hard-working and talented attorneys who advocate zealously and in good faith for their clients. Joshua Thomas is not one of them.

The Court does not levy sanctions lightly—even against a lawyer like Thomas.

---

[19] Had this case not been filed in state court and removed to federal court, the Court would have considered issuing a pre-filing injunction against Thomas.

The Court is mindful of the effect sanctions may have beyond their immediate impact. Plus, imposing sanctions involves several procedural steps and demands extraordinary time, effort and resources.  This explains why bad conduct in the courts can go unchecked.  Lawyers, their clients and courts often decide that moving to sanction or sanctioning someone just isn't worth the trouble.  In this case it is.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.