1          UNITED STATES DISTRICT COURT

2         EASTERN DISTRICT OF PENNSYLVANIA

3   KENNETH TAGGART,
                                    Case No. 2:20-cv-05503-GJP
4               Plaintiff,

5   v.                              Philadelphia, Pennsylvania
                                    May 26, 2021
6   DEUTSCHE BANK NATIONAL TRUST    10:04 a.m.
    COMPANY, et al,
7
                Defendants.
8

9           TRANSCRIPT OF SHOW CAUSE HEARING
          BEFORE THE HONORABLE GERALD J. PAPPERT
10           UNITED STATES DISTRICT COURT JUDGE

11  APPEARANCES:
    For the Plaintiff:          Joshua L. Thomas, Esq.
12                              Joshua L. Thomas & Associates,
                                PLLC
13                              225 Wilmington-West Chester Pike
                                Suite 200
14                              Chadds Ford, PA 19317

15  For the Defendants:         Edward McKee, Esq.
    (Deutsche Bank National     Evan Barenbaum, Esq.
16  Trust Company; Stern &      Stern & Eisenberg, PC
    Eisenberg, PC; Specialized  1581 Main St., Suite 200
17  Loan Servicing, LLC; and    Warrington, PA 18976
    Mortgage Electronic
18  Registration Systems, Inc.
    or "MERS")
19
    For the Defendant:          Diane A. Bettino, Esq.
20  (Wells Fargo Bank, NA)      Reed Smith, LLP
                                Princeton Forrestal Village
21                              136 Main St., Ste 250
                                Princeton, NJ 08540
22
    Court Recorder:             Jeff Lucini
23

24

25

```
1    Transcription Service:        Chris Hwang
                                   Abba Reporting
2                                  PO Box 223282
                                   Chantilly, Virginia  20153
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25
```

1          (Call to order at 10:04 a.m.)

2          THE COURT:  So following oral argument on the

3    Defendant's motions to dismiss, specifically on April 28, I

4    issued an Order to Show Cause directed to Plaintiff's counsel

5    Joshua Thomas.

6          And the order asked him to show cause why the Court

7    should not impose sanctions under Rule 11 in the Court's

8    inherent authority for nine specific issues as outlined in my

9    order of April 28.

10          On May 7, I believe it was, Mr. Thomas filed his

11    response to the Order to Show Cause, which obviously we have

12    now reviewed and are ready to discuss.

13          So, Mr. Thomas, if you would please come forward.  I

14    do have some specific questions.  And before we begin,

15    obviously, Mr. Lucini can swear in Mr. Thomas.

16          THE CLERK:  Please raise your right hand.

17                        JOSHUA THOMAS

18    having been duly sworn testified as follows:

19          THE COURT:  So, Mr. Thomas, let's start.  The first

20    issue was your failure to address the potential preclusive

21    effect of the Court's decision in Taggart v. Morgan Stanley,

22    16-62 from 2016.

23          And with respect to your quiet title claim, you

24    correctly point out in your response that your quiet title

25    claim in that case was dismissed without prejudice.

1          But when my colleague, Judge Smith, dismissed that

2     claim against MERS, which is Count 2 of your complaint in this

3     case, he said and I quote, "MERs and MERS Corp. do not have any

4     claims of any interest in the property at all.  And thus, a

5     quiet title action against them is inappropriate.

6          MERS interest in the property ended when it assigned

7     that interest to Deutsche Bank and MERS has never claimed an

8     interest subsequent to that assignment."

9          In your Amended Complaint in that case, in paragraph

10    84, you allege that MERS' assignment to Deutsche Bank was void.

11         Then in your quiet title count against MERS in that

12    same Amended Complaint, you say MERS lacked authority to assign

13    the mortgage on behalf of Decision 1 Mortgage to Deutsche Bank.

14         How is that any different from what you are claiming

15    now?  In other words, what do you allege in your Amended

16    Complaint in this case that adds anything to your quiet title

17    claim that Judge Smith opined on in 2016?

18         MR. THOMAS:  Specifically, and thank you for the

19    opportunity to respond to your questions more fully, Your

20    Honor.

21         In regards to MERS specifically, we do break down in

22    the complaint, and I have it if you'd like specific references.

23    It was not in the response and that question was not

24    specifically asked in the response.

25         But in this specific complaint, we do still include

1    that MERS' assignment of mortgage as we do still plead that it

2    is void.  We do still feel they did not have the authority to

3    file that properly on behalf of Decision 1 or anyone.

4          And since they were the entity that actually was

5    responsible for that assignment of mortgage being recorded on

6    the record, and since we are still of the position that it is

7    void documents still on the record, that is why we felt that it

8    was important to still include them in this case.

9          THE COURT:  Did you believe that that has any more

10   merit than it did the last time around?

11         MR. THOMAS:  The specific assignment of mortgage in

12   question has not been withdrawn.  So we still feel that quiet

13   title is needed in regards to that specific assignment of

14   mortgage.

15         THE COURT:  Well, you do talk a lot in this case

16   about deposition testimony from Mr. Robb (phonetic) and Mr.

17   Amaya (phonetic) and whether MERS had authority to assign the

18   mortgage to Deutsche Bank.

19         Notwithstanding whether MERS had that authority,

20   where do you allege here that MERS has claimed an interest in

21   the property subsequent to that assignment?

22         MR. THOMAS:  It's that specific assignment that gives

23   nature to the MERS' interest in this case.  Again, because they

24   recorded that assignment and it has not been taken off the

25   record, it is still slandering the title of my client.

1          Hence, why we filed the quiet title to get rid of the

2    assignment of mortgage that we still feel is void.

3          Your Honor's absolutely correct.  MERS specifically

4    was discussed and those facts were incorporated into this

5    complaint with those depositions.

6          And in those depositions, at no point was there any

7    fact where they said that that assignment would be withdrawn

8    because it was void.

9          Nor was there anything showing that MERS had any

10   further authority since that time.  Hence, why it was included

11   in this complaint as well.

12         THE COURT:  Well, the issue is that Judge Smith very

13   specifically rejected this claim against MERS in 2016.  And

14   now, five years later, or less than that, in this case, you

15   raise the same claim again.

16         And I think the crux of the issue is what has

17   happened since 2016 that supports your allegation that MERS

18   claims an interest in the property now?

19         MR. THOMAS:  Well, two things.  And Your Honor

20   already pointed one of them.  One, as you stated, that the

21   discussion of MERS was in the depositions, and I won't re-hash

22   them, but that was discussed, so there were further facts

23   brought out during those, as well as the fact that the

24   assignment of mortgage that we stated was void, has still not

25   been removed from the record.

1          MERS was responsible for that assignment being

2     recorded.  Hence, why they're still part of the case.

3          THE COURT:  Even though, Judge Smith under roughly --

4     well the same facts, says that MERS simply does not have any

5     claim of interest in the property at all and a quiet title

6     action against them is inappropriate?

7          MR. THOMAS:  Judge Smith's ruling was -- and

8     respectfully to Judge Smith, I fully understand where that

9     ruling's coming from was prior to the depositions

10    being -- going forward, the information that came out regarding

11    MERS during those depositions.

12         And still, notwithstanding the judge's ruling,

13    there's still that void assignment of mortgage.  MERS was still

14    responsible for that assignment of mortgage being on the

15    record.  Hence, why we still kept it as part of the case.

16         THE COURT:  And that's all based on so the

17    distinguishing factors as I understand it from you is the

18    deposition testimony from Mr. Robb and Mr. Amaya?

19         MR. THOMAS:  That's the primary factors as to why

20    MERS was still included, yes.

21         THE COURT:  And summarize again for me how, A, what

22    they said and why that changes anything?

23         MR. THOMAS:  Because there's a discussion as to why

24    or how MERS had the authority to create and record this

25    assignment of mortgage.

1            There was nothing given in that testimony, and they

2      were the parties who would essentially allegedly have the

3      knowledge regarding that issue, they were essentially stating

4      that MERS was never given the authority in their business

5      records.  There's no proof of it.

6            And it was unclear from those depositions why that

7      assignment was recorded by MERS in the first place.  And there

8      was no authority in their business records from anyone from

9      Decision 1 giving MERS that authority.

10            THE COURT:  Okay, the second issue I wanted to

11      address with you is your failure to plead facts supporting

12      Counts 1 through 5 in your Amended Complaint in this case in

13      light of repeated explanations from our Court and the 3rd

14      Circuit Court of Appeals regarding the requirements for

15      pleading quiet title claims.

16            And you respond as if the show cause order says that

17      these prior cases have preclusive effect.  And that's not

18      really the issue.

19            The question is in light of the instruction you

20      received from those courts in those other cases regarding the

21      necessary factual allegations required to support a quiet title

22      claim, why isn't your failure to plead those facts supporting

23      your claims here sanctionable?

24            MR. THOMAS:  Thank you, Your Honor, again to respond

25      to the question.  In regards to those specific facts, we would

1     allege that in addition to the facts that were in the

2     complaint, while they were numerous and sometimes may not have

3     been as artful as required, they did actually cover and show

4     specifically why a quiet title action was required.

5             I'll also point out that we actually -- that I did

6     state in my response specifically why the quiet title action

7     was required.

8             I go into some detail regarding the specific tolling

9     and servicing agreement relevant to this case and specifically

10    show exactly why the quiet title action for those specific five

11    clauses should not only be permitted to proceed against these

12    parties, but that there was substantial facts currently in the

13    complaint to actually warrant that.

14            THE COURT:  So where in your Amended Complaint do you

15    allege that anyone other than Deutsche Bank is claiming an

16    interest in Mr. Taggart's property?

17            I mean, I know you think the assignment of the

18    mortgage was invalid and void.  I know you think Deutsche Bank

19    violated the Pooling and Service Agreement.

20            MR. THOMAS:  Uh-huh.

21            THE COURT:  But where do you claim, for example, that

22    Stern & Eisenberg is claiming an interest in Mr. Taggart's

23    property?

24            MR. THOMAS:  Let me try and answer that question as

25    directly as I can, Your Honor.  I'm not saying that Stern &

1    Eisenberg has an interest.  I'm frankly not saying MERS has an

2    interest.

3            What I'm saying is quiet title is needed to remove

4    assignments of mortgage that should be considered void on its

5    face.

6            Quiet title is not inherently a damages or inherently

7    a claim, where we're trying to seek in and of itself damages

8    from the parties.

9            We're saying these parties were responsible for

10   something being put on the chain of title that should not be

11   there.

12           And at its heart, that's exactly what all of these

13   parties essentially did.  It's not saying they have interest

14   directly.

15           It's saying that we want these void documents removed

16   from the chain of title.  That's why those assignments and

17   that's why the parties are included, Your Honor.

18           THE COURT:  Uh-huh.  So you assert a quiet title

19   claim against SLS in Count 3, right?

20           MR. THOMAS:  Yes, Your Honor.

21           THE COURT:  Okay, but paragraph 90 of your Amended

22   Complaint alleges that SLS has "not even made claims to be the

23   owner of the mortgage and the note or a party entitled to

24   enforce the note".

25           If that's true, how can you maintain a quiet title

1    action against SLS?

2            MR. THOMAS:   That's a good question.   The way that

3    that actually occurred and why SLS is included is because

4    they're acting as the servicer for those parties.   They're

5    continuing to act in the interest of those parties based off of

6    the void assignments of mortgage.

7            So we're stating that the actions taken by SLS

8    against the property of Mr. Taggart, it specifically warrants a

9    quiet title action because of the documents they're relying on.

10           THE COURT:   But you say straight out SLS has not made

11   claims to own the mortgage or the note or to be a party

12   entitled to enforce it?

13           MR. THOMAS:   That's exactly correct.   That's why

14   we're saying that --

15           THE COURT:   You don't see anything inherently

16   contradictory in that statement versus the claim you

17   move -- you've made?

18           MR. THOMAS:   The only contradictory item would be if

19   quiet title was only for parties making a claim to the

20   property.   That's not the case.   That's not what we're

21   pleading.

22           What we're pleading specifically is these parties are

23   responsible for documents being recorded in the chain of the

24   title that should be either considered void or are invalid.

25           SLS is also, at least in part, responsible for those

1    documents not only being recorded, but being pursued further.

2         THE COURT:  Your reliance on the District of New

3    Hampshire's decision in Drouin v. American Home Mortgage

4    Servicing puzzled me and I think increases, you know, my

5    skepticism of your position.  I mean, that case has nothing to

6    do with pleading facts in support of a Pennsylvania law quiet

7    title claim.

8         As you should know, the case addresses nonjudicial

9    foreclosure in New Hampshire, which is obviously very different

10   from anything going on here.

11        The case addresses the issue of whether plaintiffs

12   had standing to challenge a putative assignment of their

13   mortgage, which again, is not related to any issue here.  There

14   is nothing in that decision that supports your position and I

15   wonder why you rely on it?

16        MR. THOMAS:  Absolutely, and I'll explain.  We're not

17   using it as anything more than to show that an assignment

18   of -- that the attacks that were taken regarding the PSA and

19   the assignment of mortgage are not merely voidable, but void.

20        That was the only takeaway from that case.  We're not

21   relying on it for anything regarding the Pennsylvania law.

22   It's merely --

23        THE COURT:  Is that really how you think you've

24   worded that and explained that?

25        MR. THOMAS:  I have included the case specifically in

1   regards to the PSA and explained that the assignments

2   themselves are void, not voidable.

3          And the reason I incorporated in the <u>Drouin</u> argument

4   on page 12 was specifically to say not because we're trying to

5   rely on them to -- for quiet title support, but specifically in

6   regards to the transfer of those -- the essentially the

7   assignments themselves being void and not merely voidable.

8          That was specifically referenced right before the

9   case cite.  That's exactly the details we're looking for as in

10  regards to that.

11         And it even says, after the case citation, that the

12  homeowners cannot challenge the assignment.  And then, that

13  case actually says actually they can, here's why in regards to

14  it being void.

15         That's what it was referred to.  That was the only

16  reason.  There was no purpose beyond that just to show that an

17  assignment of mortgage can be considered void and should be.

18         Actually state the second to -- actually, the last

19  line that this case should be instructive why <u>U.S. Bank v.

20  Gerber</u> can be relied on.  So I actually do distinguish that at

21  the end of that paragraph, Your Honor.

22         THE COURT:  Let's look at issue 3, which was your

23  failure to plead facts supporting Counts 6 through 10.

24         Again, after repeated guidance from the District

25  Court and the Court of Appeals regarding the requirements for

1    pleading slander of title claims, you say, and I of course am

2    referring there to Taggart v. Morgan Stanley, Taggart v. Wells

3    Fargo, you say you plead claims for slander of title based on

4    pleadings and evidence from the defendants in state court.

5            But your claims are really very similar to those in

6    case number 16-62 and 16-63, which was the Taggart, Morgan

7    Stanley and Taggart, Wells Fargo cases.

8            In the Morgan Stanley case, Judge Smith summarily

9    dismissed your slander of title claims for failure to plead

10   facts supporting those claims.

11           And in the Wells Fargo case, Judge Stengel did the

12   exact same thing.  What is the difference this time around?

13           MR. THOMAS:  As stated with the previous claims, much

14   of the facts that came out of those depositions further support

15   slander of title.

16           I know I referenced earlier slander of title.  So,

17   essentially, it's the same thing I said previously in regards

18   to the fact that much of the facts that are different from

19   those cases are from those depositions, that the documents that

20   were recorded that we considered void slandered the title.  And

21   as such, that's why those claims were submitted.

22           THE COURT:  These underlying depositions that you're

23   relying on as a distinction now, they were again part of the

24   record in the state court foreclosure proceeding, correct?

25           MR. THOMAS:  Correct, Your Honor.

1          THE COURT:  And they were part of what the state

2     court judge decided before entering summary judgment in your

3     opponent's favor, correct?

4          MR. THOMAS:  I honestly don't know what he decided or

5     what he reviewed because he didn't --

6          THE COURT:  Well --

7          MR. THOMAS:  -- state clearly in his opinion what he

8     stated.  I will say that we actually raised --

9          THE COURT:  He -- they were part of the record there.

10    And obviously, the courts are -- will consider the record

11    before them.

12         So unless you have any affirmative evidence that

13    would accuse the state court judge of selectively ignoring

14    parts of record, the question is that was all before the state

15    court judge and was part of his decision to enter summary

16    judgment against your client, right?

17         MR. THOMAS:  Well, I'm only aware of one case where a

18    judge actually admitted that he would not actually -- well, the

19    judge would not review documents.  I don't have that

20    affirmative evidence here.

21         THE COURT:  Of course, you don't.

22         MR. THOMAS:  What I'm saying is I don't have what the

23    judge relied on or didn't rely on --

24         THE COURT:  But it was part of the record?

25         MR. THOMAS:  It was part of the record.

1          THE COURT:  In the state court foreclosure action,

2    which you lost?

3          MR. THOMAS:  I'll also point out, Your Honor, that

4    back in --

5          THE COURT:  There's a question there.

6          MR. THOMAS:  The answer is yes.

7          THE COURT:  Thank you.

8          MR. THOMAS:  And if I may elaborate on the answer,

9    Your Honor?

10          THE COURT:  Uh-huh.

11          MR. THOMAS:  In that case in 2019, we had actually

12    submitted counterclaims.  Those counterclaims were actually

13    preliminary objected to by the attorneys --

14          THE COURT:  Okay.

15          MR. THOMAS:  -- in that case.

16          Those claims were withdrawn because essentially they

17    were stated that they were improper to bring in a foreclosure

18    action.  We brought them in the separate action, originally in

19    state court, and they were moved to here.

20          But essentially, what Your Honor is asking was these

21    specific claims were not ruled on because they're objected to

22    and because they were not part of a decision.

23          THE COURT:  Well, they were ruled on.  They were

24    objected to and a court ruled on those objections and the court

25    handled it accordingly.

1          MR. THOMAS:  Actually --

2          THE COURT:  But --

3          MR. THOMAS:  They did not, Your Honor.

4          THE COURT:  -- the issue is this was all part of the

5   underlying state court record. which resulted in the entry of

6   summary judgment against you.  So --

7          MR. THOMAS:  If I may, Your Honor?

8          THE COURT:  -- we're back to -- yeah, you may when

9   I'm finished.  We're back to using this alleged purported

10  deposition testimony now is simply a collateral attack on the

11  decision of the state court.  It can't be anything other than

12  that.

13         MR. THOMAS:  If I may?

14         THE COURT:  Don't you see that?

15         MR. THOMAS:  If I may respond in full, Your Honor, to

16  that question?

17         THE COURT:  You don't have to ask permission to

18  respond.  You can respond.

19         MR. THOMAS:  The quiet -- the claims that were

20  actually submitted that were objected to were not ruled on.  We

21  specifically withdrew them and then filed them as a separate

22  action.  They were not denied.  There was no order submitted on

23  those POs.

24         THE COURT:  But --

25         MR. THOMAS:  In regards to your specific question,

1    however, again, that case was only about a foreclosure action.

2              As I stated previously and I believe stated in the

3    pleadings as well, the fact that these claims arose out of that

4    action are a separate action.  The --

5              THE COURT:  No, that's -- no, no, no, no.  That's

6    simply wrong as a matter of law.  You deposed these people.

7    They said things that you didn't like.  They said things that

8    you think supported your case.  They were part of the record in

9    the state court action.  And the state court judge ruled

10   against you.

11             The question's really very simple.  By resting and

12   basing your claims at least in part on the deposition testimony

13   of those people, whose deposition testimony was part of the

14   record in the state court, you are obviously collaterally

15   attacking the judgment of the state court.  There's

16   procedurally no other way for you to define that.

17             MR. THOMAS:  There's --

18             THE COURT:  Do you understand that?

19             MR. THOMAS:  There's a way, Your Honor.  And that's

20   why --

21             THE COURT:  So the answer is, no, you don't

22   understand that?

23             MR. THOMAS:  I understand what you're saying, Your

24   Honor.

25             THE COURT:  I know -- I don't -- I'm not asking you

1    to understand what I'm saying.  I'm asking you to understand

2    the underlying principle I'm articulating to you.

3              MR. THOMAS:  And the principle is a quiet title

4    action is separate from a foreclosure action.  It is.

5              THE COURT:  Okay.

6              MR. THOMAS:  I mean, that's why I included the case

7    law showing there were separate claims and why that they were

8    not  -- nothing is seeking to try and overturn the order that

9    was submitted years after this case was filed.

10             What we're specifically doing is pursuing other

11   claims in regards to the matters stated.  We're not looking, in

12   fact, we already have an appeal filed for that exact purpose

13   and that's currently in the Superior Court.

14             THE COURT:  Right, and we -- but we've talked about

15   that.  That doesn't mean that it's not a final judgment for my

16   purposes here.

17             MR. THOMAS:  It's for --

18             THE COURT:  Where do you allege malice?

19             MR. THOMAS:  I'm sorry?

20             THE COURT:  Where do you allege malice from any of

21   the Defendants in this case with respect to the slander of

22   title claims?

23             MR. THOMAS:  Frankly, I don't think that we

24   specifically showed malice in and of itself the way it's

25   normally defined.

1          I think we're specifically showing title of slander

2   by the recording of those documents that haven't since been

3   withdrawn.

4          THE COURT:  Okay, topic four was your failure to

5   address the statute of limitations --

6          MR. THOMAS:  Uh-huh.

7          THE COURT:  -- and equitable tolling with respect to

8   Counts 11, 16, and 17.  So let's start with Count 11, which is,

9   as you know, your breach of contract claim against the Deutsche

10  Bank.

11         And in page -- you discuss the statute of limitations

12  for breach of contract, which is really just a restatement of

13  paragraph 28 of your Amended Complaint.

14         And your argument is essentially that if the statute

15  of limitations bars your breach of contract claim, then it also

16  bars the foreclosure action, right?

17         MR. THOMAS:  In part, not --

18         THE COURT:  But that isn't a legal argument.

19         MR. THOMAS:  In part --

20         THE COURT:  That doesn't explain your breach of

21  contract claim here to the extent it's based on conduct that

22  occurred before October 2016 and why it isn't barred by the

23  four-year statute of limitations.  Go ahead.

24         MR. THOMAS:  Your Honor, we actually go into some

25  detail regarding tolling in this case.  So we go into

1   equitable --

2          THE COURT:  Let's -- we'll get into tolling later.

3   Answer that first part.

4          MR. THOMAS:  That's what I'm trying to answer, Your

5   Honor.  If you may or if I can ask, Your Honor, please ask the

6   question so I can answer it directly then if that's not going

7   to be the answer.

8          Why do you -- how would I ask it so you can answer

9   it?  Why do you rely on the principle that if the statute of

10  limitations bars your breach of contract claim, then it also

11  bars the foreclosure action, which again as we speak, is a

12  final judgment against you?  How does -- that makes no sense.

13  Please explain that to me?

14         MR. THOMAS:  I understand, Your Honor.  Essentially,

15  what we're saying is because in part the breach, again, that's

16  why I went into equitable tolling as well as the ongoing

17  controversy, but the breach at least in part was regards to the

18  claims in the foreclosure action, even though there was ongoing

19  breaches as was discussed throughout.  And there was actually

20  ongoing breaches in addition to those that you're specifically

21  referencing to.

22         That's why we say the equitable tolling would apply.

23  That's why we're saying that once the fraud was discovered, we

24  immediately pursued this action.

25         That's why we're saying then in regards to statute of

1    limitations, they were either told or would not have actually

2    commenced until that fraud was discovered.

3             THE COURT:  You're kind of like -- it's kind of like

4    a law student, who doesn't understand the question, but has a

5    lot of good sounding stuff memorized, equitable tolling, fraud,

6    discovery rule.

7             None of this applies here.  And you have a four-year

8    statute of limitations for a breach of contract claim.

9             Now let me start with one observation.  By arguing

10   that if the statute of limitations bars your breach of contract

11   claim, then it also bars the foreclosure action, that is just a

12   direct collateral attack on the foreclosure action.  You're

13   still fighting that battle here.

14            Now you can fight that battle in the Superior Court.

15   You know, if your track record's an indicia, you're going to

16   lose it, but you can't fight that battle here, okay?

17            MR. THOMAS:  Your Honor --

18            THE COURT:  That's nothing more than an attack on the

19   judgment.  But let's get to --

20            MR. THOMAS:  May I respond to that, Your Honor?

21            THE COURT:  No.  Let's get to your reliance on 41

22   P.A. §5529, which says there's a 20-year statute of limitations

23   for execution of a judgment against personal property.

24            That has absolutely nothing to do with your breach of

25   contract claim, which is subject under Pennsylvania law to a

1    four-year statute of limitations.

2            Why would you reference a 20-year statute of

3    limitations for execution of a judgment against personal

4    property?  That's not a -- that's completely unrelated to a

5    breach of contract claim.  Why would you rely on that?

6            MR. THOMAS:  At this point, Your Honor, I can't tell

7    you why we relied on that specific statute.  That's why I went

8    into much more detail regarding the statute of limitations

9    being tolled and --

10           THE COURT:  Well, whoa, whoa, whoa, hold on, hold on,

11   hold on.  I issue an Order to Show Cause --

12           MR. THOMAS:  Yes.

13           THE COURT:  -- giving you a chance to prove to me why

14   I shouldn't sanction you.  And you offer me back an argument in

15   support of your position that your four -- that your breach of

16   contract claim is not barred by the statute of limitations.

17           And your argument relies in part on a statute

18   involving a 20-year statute of limitations for something that

19   is complete irrelevant, completely irrelevant to anything in

20   this case.

21           And when I ask you why you would make that argument

22   to the Court, you say you just can't think of why.  Did I miss

23   anything there?

24           MR. THOMAS:  What I specifically said, Your Honor, in

25   the paragraph you're referencing, is that the statute of

1    limitations and equitable tolling were addressed in Plaintiff's

2    Opposition to Dismiss at 25.  However, more detail will be

3    given --

4              THE COURT:  I can read.

5              MR. THOMAS:  I understand, but I'm --

6              THE COURT:  If I could read -- if I had, you know, if

7    I couldn't read, we would have had this argument, but I mean, I

8    can read.

9              MR. THOMAS:  And I'd like to couch the answer in this

10   --

11             THE COURT:  The statute of -- and Defendant's

12   Deutsche Bank -- have alleged mortgage and notes are under seal

13   and the statute of limitations is 20 years pursuant to 42 P.A.

14   5529.  As such, that applicable statute has not passed yet.

15             You're saying your breach of contract claim is not

16   outside the statute of limitations because it's governed by a

17   20-year statute, which has not passed yet.  That's --

18             MR. THOMAS:  They're --

19             THE COURT:  -- that's ridiculous.  That's not true.

20   That's not even remotely true.  Why would you make that

21   argument to me?

22             MR. THOMAS:  If I may go into some detail, I can

23   explain why, Your Honor.

24             THE COURT:  Just answer the question more directly,

25   please.

1          MR. THOMAS:  More directly, Your Honor, is because

2     that specific argument there attempting to try and pursue

3     property from my client in the foreclosure action.

4          THE COURT:  Oh, stop right there.  In the foreclosure

5     action, again, that's an attack on the judgment in the

6     foreclosure action.

7          MR. THOMAS:  Which --

8          THE COURT:  Whatever they did or didn't do or

9     whatever you're going to argue in the Superior Court with

10    respect to the foreclosure action is not at all relevant to

11    this.

12         You asserted a breach of contract claim, which is

13    independent from anything that happened in the foreclosure

14    action.

15         And if you contest that, then you are admitting that

16    this is all just a big collateral attack on the state court

17    foreclosure action.

18         MR. THOMAS:  If I may finish the sentence, Your

19    Honor?

20         THE COURT:  You got to start making a little more

21    sense.

22         MR. THOMAS:  I'm making sense --

23         THE COURT:  I'm -- you know, I'm trying to give you

24    an opportunity here, but you know, every answer that you

25    preface with while in the state court foreclosure action does

1    nothing but tack another nail --

2            MR. THOMAS:  And that's why I was looking at trying

3    to finish --

4            THE COURT:  -- into that argument.

5            MR. THOMAS:  -- finish that sentence so I can make

6    clear, that's not what I'm doing at all, Your Honor.  I'm

7    starting there by saying they're relying on a document.  In the

8    state foreclosure action, they're relying on a document, the

9    mortgage.

10           Our breach of contract claims are outside of what

11   they are trying to rely on.  That's why it's a separate action,

12   Your Honor.

13           That's why we're saying that it's a separate action,

14   and frankly, that's why we started to go into and that's why

15   this is part of the answer to the question you're asking why we

16   went into the tolling.  And that when we discovered the fraud

17   during --

18           THE COURT:  What --

19           MR. THOMAS:  -- the depositions --

20           THE COURT:  -- what does that have to do with your

21   breach of contract claim?  You -- now you're saying that

22   there's fraud in the depositions in the state court foreclosure

23   action.

24           We've dealt with that already here and/or oral

25   argument.  That was part of the record that the state court

1    judge considered, okay?

2              By now coming in and basing a claim on alleged fraud

3    in the state court foreclosure action, you are doing nothing

4    other than collaterally attacking the state court foreclosure

5    action.  And why can't you see that?

6              MR. THOMAS:  Because --

7              THE COURT:  Why don't you understand that?  What do I

8    need to do to get you to understand?

9              MR. THOMAS:  Your Honor, with all due respect, I

10   understand what you're saying, but --

11             THE COURT:  No, but respectfully then, your answers

12   are contempt of Court --

13             MR. THOMAS:  They're not, Your Honor.

14             THE COURT:  -- because if you understood what I am

15   saying, you wouldn't be answering the way you are and you

16   certainly wouldn't have filed something like this with me.

17             MR. THOMAS:  Your Honor, what I filed was

18   specifically showing that these claims are separate from the

19   foreclosure action.  The judge ruled on the foreclosure action.

20   He did not rule on the --

21             THE COURT:  But you're alleging fraud.  And when I

22   ask you what fraud are you alleging, you're talking about

23   alleged fraud that you revealed in depositions in the state

24   court foreclosure action, which you lost a long time ago.

25             MR. THOMAS:  It wasn't a long time ago, Your Honor.

1          THE COURT:  It was to me.

2          MR. THOMAS:  I'm sure.  But again, Your Honor,

3    respectfully, if I -- if they stated that they robbed a bank

4    during that deposition, that would be a separate action.

5          If they stated that they hit someone with a car, that

6    wouldn't be part of the foreclosure action.  That would be a

7    separate claim.  I highly doubt there would be an issue in any

8    court that it was a separate claim.

9          That's exactly what we're saying here that the

10   separate claims that we brought are not -- nor were they ever

11   part of the foreclosure action summary judgment.

12         They were not precluded by that summary judgment

13   action.  These claims, and this is why I'm trying to be as

14   clear as possible, Your Honor, because these claims are

15   separate from that judgment.

16         This case was filed almost two years before that

17   judgment was entered --

18         THE COURT:  These claims --

19         MR. THOMAS:  -- actually a long time ago.

20         THE COURT:  -- excuse me, these claims are based on

21   what happened in the state court case, because you're asserting

22   an equitable tolling argument, based on fraud, which prevented

23   you from filing suit.

24         The alleged fraud --

25         MR. THOMAS:  Uh-huh.

1      THE COURT:  -- is in the state court foreclosure

2  action.  At least five times, okay, in paragraph 280 of your

3  complaint, and God knows elsewhere, you reference conduct that

4  you believe demonstrates a breach of contract that occurred in

5  2010.

6      How is all of that not barred by the statute of

7  limitations?  And then, don't rely on any ongoing violations.

8  You say Deutsche Bank failed to provide you with proper

9  notices.  How is anything that happened in 2010 not barred in

10  this case when you have a four-year statute of limitations?

11      MR. THOMAS:  Because that specific fact is not what

12  the breach of contract is only relying on.  It's relying on,

13  and I know you said not to rely on it, but it's relying on

14  subsequent items that occurred after that 2010 --

15      THE COURT:  In the state court foreclosure case?

16      MR. THOMAS:  No, the 2010 document you're referring

17  to again --

18      THE COURT:  In the state court foreclosure case?  You

19  keep referring to fraud in the state court foreclosure case.

20      MR. THOMAS:  The state court foreclosure case focuses

21  on my client defaulting.  It doesn't focus on anything else.

22  At the end of the day, that was the only thing that case was

23  about.

24      THE COURT:  But the fraud that you're relying on

25  allegedly arose by deposition testimony that you think shows

1    fraud that was part of the record the state court judge before

2    he -- had before he ruled against you.

3             And you either have a claim that is clearly barred,

4    clearly barred by the four-year statute of limitations or you

5    have to acknowledge that you're collaterally attacking the

6    state court foreclosure case.  Which is it?

7             MR. THOMAS:  With all due respect, I think it's a

8    false comparison, Your Honor.  It's neither.

9             THE COURT:  It's neither, okay.

10            MR. THOMAS:  It's not --

11            THE COURT:  Okay.  So let's talk about your

12   references to case law in anti-trust and civil rights law,

13   which I don't see how they apply.

14            And your point that you could not have discovered the

15   violations until you began researching defenses for the

16   foreclosure action as part of your application of the discovery

17   rule, okay.  So break that down for me?

18            MR. THOMAS:  Where specific --

19            THE COURT:  What are the violations?  What are the

20   violations?  You could not have discovered the violations.

21   What are the violations?

22            MR. THOMAS:  As I specifically stated and as Your

23   Honor actually stated, there are numerous violations that were

24   actually brought up at the depositions.  Those --

25            THE COURT:  In the state court foreclosure case?

1           MR. THOMAS:  There are numerous violations brought

2    up --

3           THE COURT:  May I -- can you please confirm that for

4    me?  When you refer to depositions, we need the record to be

5    clear.  You're going to see it again.

6           The depositions that you are referring to are to the

7    two gentlemen you mentioned earlier.  That was part of

8    discovery in the state court case in Bucks County; is that

9    correct?

10          MR. THOMAS:  The new claims that arose --

11          THE COURT:  Is that -- that's a simple --

12          MR. THOMAS:  Out of the deposition --

13          THE COURT:  -- is that correct?

14          MR. THOMAS:  The way it's being phrased, Your Honor,

15   it's --

16          THE COURT:  Where were they deposed, as part of what

17   case?

18          MR. THOMAS:  They were deposed and the new claims

19   arose in the state court action.

20          THE COURT:  What -- were they deposed as part of

21   discovery in the state court foreclosure case?

22          MR. THOMAS:  That is how the new claims were learned,

23   yes.

24          THE COURT:  It's a yes or no.  Were the people that

25   you are saying gave fraudulent testimony or revealed fraud to

1  you, was that testimony given as part of depositions during the

2  discovery process in the state court foreclosure case, yes or

3  no?

4          MR. THOMAS:  In part yes.  Yes.

5          THE COURT:  Thank you.

6          So 16 and 17, Counts 16 and 17, the FDCPA claims

7  against Deutsche Bank and SLS, you say that the violations were

8  ongoing based on SLS' harassing phone calls, but Count 16 does

9  not reference any such calls and refers only to Deutsche Bank's

10  failure to verify a debt from June of 2018.

11          You filed this lawsuit in October of 2020.  How on

12  the face of that pleading wouldn't the statute of limitations

13  bar that claim?

14          MR. THOMAS:  In addition to the specific --

15          THE COURT:  What's -- do you know what the state of

16  limitations is for an FDCPA claim?

17          MR. THOMAS:  Four years, Your Honor. .

18          THE COURT:  Four?

19          MR. THOMAS:  Yes, Your Honor.

20          THE COURT:  Okay.

21          MR. THOMAS:  Do you need any further response to that

22  or is that sufficient, Your Honor?

23          THE COURT:  Well, I mean, you don't want to ask me

24  what's sufficient.

25          MR. THOMAS:  Your Honor, you brought up the civil

1    rights claims --

2              THE COURT:  Why wouldn't the statute of limitations

3    bar your claim?

4              MR. THOMAS:  Because the statute hadn't pass on that

5    claim as well as the subsequent claims after that, Your Honor.

6              THE COURT:  Uh-huh.  Notwithstanding the fact that

7    you filed this case in October of 2020?

8              MR. THOMAS:  For a 2018 document, yes, Your Honor.

9              THE COURT:  All right, so let's talk about now your

10   failure to allege that in the Taggart, Morgan Stanley case,

11   again, the allegations in paragraph 70 and 135 of your Amended

12   Complaint regarding ownership of the mortgage and the note on

13   Mr. Taggart's property, okay.

14             And your response, I understand that the 2016 case,

15   again, involving this property was dismissed without prejudice,

16   but that doesn't change the fact that in that case, Judge Smith

17   let your quiet title claims against Deutsche Bank and U.S. Bank

18   proceed to discovery solely because of this question about

19   whether U.S. Bank had an interest, right, in the mortgage?

20             There was a hearing in October of 2016.  Judge Smith

21   pointed out the discovery had revealed that U.S. Bank did not

22   have any interest in the property.  And at the end of the

23   hearing, you agreed that the court should dismiss those quiet

24   title claims, all right?

25             Now you include those same allegations in your

1      Amended Complaint without any reference to their involvement in

2      this prior proceeding or any new evidence to support the

3      allegation.  How can you do that?

4              MR. THOMAS:  Once again, Your Honor, as we stated

5      previously, the assignments of mortgage has still not been

6      withdrawn from the record that shows their interest, or not

7      their interest, that shows why they were included because they

8      were on the chain of assignments.

9              Further, the depositions showed additional facts in

10     regards to those parties after those that was entered, which is

11     why we continued to pursue the action against them as well.

12             THE COURT:  Okay, and Judge Smith also told you in

13     that case that your quiet title claims and the state

14     foreclosure could not proceed separately because "you can't

15     have one court say the mortgage is valid and have another court

16     say the mortgage is not valid".  Why doesn't that same

17     principle apply here in this case?

18             MR. THOMAS:  Because we're not attacking the mortgage

19     specifically.  We're attacking the chain of assignments, Your

20     Honor.  We're saying they should be void.

21             THE COURT:  Do you see any inherent contradiction

22     within the sentences you just said?

23             MR. THOMAS:  Only if I thought the assignments of

24     mortgage and the mortgage itself are the same document.

25     They're not.

1              The chain of assignments can be void.  There's

2    certainly a thing in Pennsylvania that's used as corrective

3    assignment.

4              And if a corrective assignment was made showing a

5    true change of assignments, then the mortgage can certainly be

6    enforced.

7              In this case, they're relying on documents that

8    outside of the mortgage that are void and hence why their quiet

9    title action's being pursued to try and void those assignments.

10             THE COURT:  Okay, so let's go to issue 6 from my

11   order.  And that was your motion for injunctive relief and

12   hearing on the quiet title claims, which was ECF 39 and why

13   that didn't violate Rule 11, subparts (b)(1) and (2),

14   particularly when we consider another court's disposition of

15   similar motions.

16             But let's start with this.  You are telling me you

17   sought this relief because if you were victorious, if you won

18   that motion, it would effectively halt the state court action,

19   okay.

20             That is an outright admission that this case is a

21   collateral attack on the state court foreclosure.  There is no

22   way to interpret that position any other way when you're

23   telling me that you need to win your motion for injunctive

24   relief to halt the state court action.  What possibly could I

25   be missing there?

1           MR. THOMAS:  You wanted the chain of assignments

2    cleared up.  If this Court ruled, as what we requested to be

3    done, that any chain of assignments are void, then in order to

4    proceed with the state court action, the proper chain of

5    assignments would have to be submitted.

6           Like I just said, there could be a corrective chain

7    of assignments showing that void assignments were --

8           THE COURT:  But can't you say what you just said?

9           MR. THOMAS:  No, Your Honor.

10          THE COURT:  You cannot see that you literally just

11   told me that if I ruled in your favor, you'd halt the

12   foreclosure in the state court case?  That's what you just said

13   to me.

14          MR. THOMAS:  Your Honor, what I --

15          THE COURT:  And then, you say to me that this case is

16   not a collateral attack on the state court's judgment.

17          MR. THOMAS:  Well --

18          THE COURT:  Do you -- I mean.

19          MR. THOMAS:  Number one, that was filed prior to a

20   judgment being entered.  Number two, in this --

21          THE COURT:  But your position remains the same.  You

22   just articulated the relief you sought and the reason for it.

23   And it's to halt the foreclosure proceedings emanating from the

24   state court case.  That's what you just said.

25          MR. THOMAS:  And prior to that response, I also said

1    if the chain of assignments was corrected, they could pursue

2    the mortgage unhindered --

3              THE COURT:  But --

4              MR. THOMAS:  -- because there would no longer be a

5    chain that was -- that had void documents included.

6              THE COURT:  Do you not see that you just literally

7    admitted to me that the purpose of your motion, and it's

8    nothing new, you say it in your papers too, the purpose of your

9    motion was to halt the state court action?  You just said that

10   to me?

11             MR. THOMAS:  I did not say that, Your Honor, not

12   those specific words.  What I specifically said was that if the

13   chain of assignments was clarified, then it would be proceed.

14   That's what I said.

15             That it's not to try and strike down a nonexistent

16   judgment that hadn't been filed when that motion was filed and

17   this relief was not permitted in any way.

18             It was specifically to try and have this case heard.

19   So if there's any corrective assignments or any assignments

20   that were being void as is exactly what we were attempting to

21   show in this case, then they could be incorporated into that

22   matter, Your Honor.

23             THE COURT:  To have this case heard, so that if there

24   were any corrective assignments, translated so that if I ruled

25   in a way favorable to you on any of the issues, you could go

1   back and use that ruling in the state court case.  That's what

2   you just said to me.

3           MR. THOMAS:  To go back and clear the chain of title,

4   Your Honor.

5           THE COURT:  Exactly.  Thank you.  That's perfect.

6   You reiterate in your response to my order that your quiet

7   title claim is based on your belief that Deutsche Bank does not

8   have a valid interest, the assignments were invalid.

9           Although you couldn't raise a quiet title claim in

10  the foreclosure action, you could raise all of those arguments

11  about the invalidity of Deutsche Bank's title and the

12  assignments.

13          And, in fact, you did from our discussions at oral

14  argument.  By granting summary judgment in the foreclosure

15  case, the state court necessarily decided that Deutsche Bank

16  had a valid interest and that the chain of assignments was

17  valid.  You understand that, right?

18          MR. THOMAS:  I understand that's what his ruling came

19  to and that's why it's on appeal, yes.

20          THE COURT:  Okay, that's -- and that's fine.  You can

21  appeal it through the chain -- the proper chain in the state

22  court system.

23          What you can't do is appeal it by filing this

24  lawsuit, but --

25          MR. THOMAS:  This lawsuit was filed two years before

1    that.

2        THE COURT:  -- if you want to challenge the validity

3    of Deutsche Bank's interest, or the validity of the assignments

4    of the mortgage, you do that by appealing the state court

5    foreclosure case, which you are doing.

6        Can't you see that you are making essentially the

7    same arguments here, that so much, if not all of this case, is

8    an appeal, for lack of a better word, to federal court of the

9    decision against you in the state court?  Can't you see that?

10        MR. THOMAS:  Absolutely not, Your Honor.  This was

11    filed two years almost before that state court action.  To

12    define this as an appeal completely ignores that timeline.  So

13    absolutely not.  This is not an appeal.

14        THE COURT:  What about now?  What about now?

15        MR. THOMAS:  We still have the separate claims that

16    are completely outside of the foreclosure.  We were told by a

17    prior judge can not be brought in foreclosure --

18        THE COURT:  None of those claims are complete --

19        MR. THOMAS:  -- and were withdrawn since they were

20    not part of it.

21        THE COURT:  None of those claims are completely

22    outside the foreclosure because the elements of all of them

23    were a necessary part of the state court's judge's decision.

24    None of them are out -- completely outside the foreclosure

25    action.  None of them.

1          MR. THOMAS:  Breach of claim is not part of it.

2     Quiet title is a separate action.  The foreclosure steps that

3     are required to get to foreclosure are frankly very specific

4     especially in Pennsylvania.

5          Quiet title is a very separate action.  They don't

6     overlap in regards to what's required for one or the other.

7          THE COURT:  Okay.  So your motion, if I needed

8     further evidence as to its motive, was clearly an attempt at a

9     sur-reply to the motions to dismiss.

10         You spend the first 12 pages of your Motion for

11    Injunctive Relief re-hashing your arguments in response to the

12    motions to dismiss.  That's not proper.

13         And let's look at your arguments regarding likelihood

14    of success on the merits and irreparable harm.  The state

15    court's foreclosure judgment undermines your position about the

16    validity of Deutsche Bank's receipt and possession of the loan.

17    Can't you see that?  Don't you see that?

18         MR. THOMAS:  I understand that's their position, but

19    again, because they ruled summary judgment, but didn't submit

20    an opinion, I don't know exactly why they ruled in the way that

21    they did.

22         THE COURT:  Well, what does it matter why they ruled

23    why they -- that's --

24         MR. THOMAS:  Because they made --

25         THE COURT:  -- that is respectfully completely

1   irrelevant.

2            MR. THOMAS:  Honestly, it's not, Your Honor.

3            THE COURT:  They couldn't have entered judgment

4   against you and in favor of Deutsche Bank without deciding that

5   all of the elements necessary to succeed in the foreclosure

6   action had been proven.

7            MR. THOMAS:  Respectfully, I disagree to some extent.

8            THE COURT:  Okay.

9            MR. THOMAS:  There's a case that was in New Jersey

10  that actually came in the appellate division, that I believe

11  was actually again, not obviously -- need to be relied on, but

12  can be instructive that actually said that the note was

13  mishandled, yet a judgment's permitted any way.  There's --

14           THE COURT:  So to prevail on a foreclosure claim in

15  Pennsylvania, a plaintiff has to show, among other things, that

16  the parties to and date of the mortgage and of any assignments.

17  That's an element of a foreclosure case in Pennsylvania.

18           And a foreclosure judgment necessarily includes a

19  finding that the mortgage was valid and that the mortgage

20  holder, who is the plaintiff in a foreclosure action, has

21  standing to foreclose.  That's just black letter law.

22           Summary judgment for Deutsche Bank required the state

23  court to recognize the validity of its interest in the mortgage

24  and the validity of the chain of assignments between it and

25  Decision 1.

1              And the state court did explain that.  If you look at

2      its opinion in the foreclosure action, it found that MERS

3      assigned the Decision 1 Mortgage to Deutsche Bank in 2010 and

4      that the evidence showed that Deutsche Bank was the proper

5      mortgage holder.  The state court conclusively determined all

6      of that.

7              You can appeal it and you are appealing it --

8              MR. THOMAS:  You --

9              THE COURT:  -- but you're not making any different

10     arguments here.  And you're not asserting any separate claims.

11     And the necessary findings in the state court govern most, if

12     not all, of what you're doing here.

13             MR. THOMAS:  Whether the assignments of mortgage are

14     void or not cannot be brought in the foreclosure action.

15     That's what we were stating.  That's why they're brought here.

16     And that's why I mean --

17             THE COURT:  They had to have been found to be valid.

18     The state court judge could not have entered judgment in favor

19     of Deutsche Bank without so finding.  Don't you understand

20     that?  How can't you understand that?

21             MR. THOMAS:  I absolutely --

22             THE COURT:  What can I do to get you to understand

23     that?

24             MR. THOMAS:  I absolutely understand that's how the

25     judge ruled.  I understand that.  Again, the opinion was not

1   specific as you're --

2        THE COURT:  So whether you think the judge is right

3   or wrong isn't the issue.  That's how the judge ruled.  You

4   just told me that.  That's how the judge ruled.  So the judge

5   made those findings.

6        MR. THOMAS:  And --

7        THE COURT:  And as we sit here today, that's a final

8   judgment.  Is there anything about that you do not understand?

9        MR. THOMAS:  No.

10       THE COURT:  Thank you.  Let's talk about your

11  repeated missing of deadlines in the Court and why I should not

12  consider that conduct vexatious or in bad faith justifying

13  sanctions.

14       You say that you fixed the issue that had caused the

15  calendaring error for federal court motion deadlines.  What was

16  that issue?

17       MR. THOMAS:  I had a calendaring deadline set

18  automatically to 21 days because of the summary judgment

19  deadline that obviously was wrong.  It should have been 14

20  days.  Hence why that was corrected, so now any time I set a

21  deadline, it'll be 14 days rather than 21.

22       THE COURT:  Well, there were a lot of deadlines in

23  this case that you've missed.  It wasn't just a response to a

24  summary judgment motion.

25       MR. THOMAS:  Well --

1          THE COURT:  Virtually all deadlines you either seek

2     extensions for.  And when I deny it, you miss them and you file

3     whatever you want to file when you want to file it.  So it

4     wasn't 21 days versus 14 days.

5          Look, I've read a lot of the jurisprudence involving

6     your conduct.  Your missing deadlines and ignoring scheduling

7     orders is *de rigueur* for you.  It's how you practice law.  And

8     I can cite a number of opinions in this Court, in the District

9     of New Jersey.  It's what you do.

10          How can you just blame it on a calendaring error that

11     was so easy to fix?  What's the excuse for this entire pattern

12     of conduct, which was present in this case?

13          MR. THOMAS:  Sure, so in this case, that was the

14     reason.  In other cases, it's frankly because whenever, again,

15     I do my best and you're certainly able to cite the cases where

16     I missed the deadlines.

17          There are numerous cases where I met them.  That

18     should be the case.  I'm not trying to say that's a good thing.

19     That's what should happen.

20          What I'm saying is as a solo practitioner, it's

21     oftentimes difficult to make sure to hit them and that's why I

22     often ask for extensions.

23          Because I will ask to try to make sure that I hit the

24     proper timing for proper motions.  It's not optimal.

25     Obviously, it's not optimal.

1          I tried my best to hit every deadline I can.  And

2     when I can't and when I know that I can't, I will submit a

3     motion to extend or a motion to adjourn to try and hit the

4     deadline properly.

5          I fully understand that there is a history of me not

6     doing so properly in cases.  And those are the ones that get

7     highlighted, not the numerous cases where we were successful.

8          The biggest case where we -- I was successful and

9     hit --

10         THE COURT:  Well, it's not a batting average.  It's

11    not like if you get 3 out of 10, you're in the Hall of Fame

12    here.

13         MR. THOMAS:  I understand.

14         THE COURT:  And I have to say I don't know that I

15    have read as many -- I don't know that I have seen as many

16    judges elaborate on your consistent inability to meet deadlines

17    of any lawyer I've ever seen.

18         MR. THOMAS:  I understand.

19         THE COURT:  I mean, there are numerous -- let's just

20    stay in the federal courts.  I don't know what the state courts

21    have done with you, but numerous opinions from federal judges

22    on this side of the river and the other side of the river

23    just -- it's chronic.

24         And I have a number of solo practitioners, who

25    practice before me.  I've never had anyone engage in the

1    conduct you have.

2         I don't recall -- there might have been one.  The

3    odds there was.  I don't recall in any case you've had before

4    me, you meeting a deadline without either seeking a motion to

5    extend your deadline, which sometimes I've granted and

6    sometimes I haven't.

7         I've never -- I just don't recall you ever meeting a

8    deadline and -- an original deadline.  And I have a lot of sole

9    practitioners that I don't have that problem with.

10        And for you to stand here under oath and tell me that

11   it's just a calendaring error and by changing your calendar

12   reminder feature from 21 to 14, that I should say that, okay,

13   no harm, no foul, it doesn't work that way.

14        MR. THOMAS:  That's not what I'm saying, Your Honor.

15   With all -- respectfully, it is a problem.  I'm not denying

16   that.  I mean, there's obviously there's evidence where it's a

17   clearly a problem.  It's something again --

18        THE COURT:  If it's clearly a --

19        MR. THOMAS:  If --

20        THE COURT:  -- and I appreciate your candor, but if

21   it's clearly a problem, and it's this widespread in my cases

22   and other cases, how can anyone in my position not look at that

23   and say that it was either vexatious or in bad faith?

24        It's not just negligence anymore.  We're long past

25   oversight.

1          MR. THOMAS:  So --

2          THE COURT:  We're long past, you know, you were --

3    you confused the A case with the B case.  We're long past that.

4    How am I supposed to look at what you've done here and say that

5    it wasn't in bad faith?

6          MR. THOMAS:  I don't deem to try and tell Your Honor

7    how to make that decision.  I can tell you personally, it is a

8    problem, primarily in federal cases, not as much in state to

9    whatever reason.

10          It's not specifically you.  It's not bad faith

11    towards opposing counsel.  It's not with the intent to

12    prejudice them or Your Honor in any way.

13          It's not done to try and hinder a case or to hurt

14    anyone, frankly.  It's done frankly because I have, as has been

15    shown, oftentimes poor scheduling skills specifically with the

16    federal court.  It's a problem.

17          THE COURT:  Do you have any support help in your

18    office?

19          MR. THOMAS:  One individual, who will help

20    with -- had been helping previously with modifications and for

21    some bankruptcy preparation.  It's --

22          THE COURT:  But you don't have anyone who helps you

23    with your schedule, helps --

24          MR. THOMAS:  I tried to automate that, but no, Your

25    Honor.  Frankly, it would eliminate in my opinion numerous, if

1    not all of these issues to have someone do it.  I just don't.

2         THE COURT:  Well, let me ask you this.  You've just

3    told me that having someone work for you would eliminate all

4    these issues, but you just don't do it.

5         What am I speaking individually on behalf of my

6    colleagues on the bench supposed to take from that, that you

7    have so little respect for our schedules?

8         Schedules are orders, right?  Schedules are court

9    orders.  You violate a schedule, it's the -- you're violating a

10   court order.

11        If you have so little respect for the Court's orders,

12   and hence for the Courts themselves, how am I or anyone else

13   supposed to look at this any other way than it's just bad faith

14   on your part?

15        MR. THOMAS:  It's absolutely not an issue of respect.

16   I have the highest respect for Your Honor.  I have the highest

17   respect for every judge I ever go in front of.  Whether I agree

18   or disagree about a rule, I can strenuously disagree, I still

19   respect them incredibly so.

20        It's a reflection on me personally that I have the

21   issue.  It's not a reflection on the Courts.  It's not a

22   reflection on your -- whether I respect you or not, because I

23   do.  I respect every judge I've ever been in front of.  That's

24   not the issue.

25        The issue again is an internal issue for whatever

1   reason, it just seems to be an issue where I don't handle the

2   deadlines properly.

3          I gave you a specific reason in one case.  It's not

4   for all of them obviously.  So, that's why, Your Honor, I'm

5   asking -- that is why it's not a bad faith, it's not vexatious,

6   it's not to try and prejudice the other parties or Your Honor.

7          It's an issue on my behalf that I work every time

8   that I see an issue to try and resolve it.  It has been a

9   problem historically, I understand that.

10          And I'm working to try and resolve it and fix it.

11   But again, it's not a reflection on my opinion in any way on

12   Your Honor or any other judge or court.

13          THE COURT:  Okay.  Let's move to point A to my order,

14   the --

15          MR. THOMAS:  Okay.

16          THE COURT:  -- your -- and I think this goes to

17   respect for the courts for the judicial process.

18          And we term this in the Order to Show Cause your lack

19   of discretion and diligence in crafting, reviewing, and

20   submitting your Amended Complaint, which repeatedly mislabels

21   the parties, recycles entire paragraphs from state court

22   proceedings, that's the cut and paste part, is riddled with

23   spelling and grammatical errors, and how that doesn't reflect a

24   disrespect for the Court and the Rules of Civil Procedure and

25   your opponents such that it doesn't constitute bad faith or

1    vexatious conduct?

2            Now a complaint can be a bit lengthy as you described

3    it, but this was 77 pages.  It was 400 paragraphs.  We went

4    through it to a degree at oral argument.  It was just a mess,

5    just a mess from top to bottom.  Just an absolute mess.

6            And the issue with copying and pasting paragraphs

7    from other pleadings, which finally, despite denying it,

8    denying to me that you did it at oral argument, you acknowledge

9    to a degree in your response that you did it.  It's not that

10   doing that violates the rules.  It's not that you have to

11   rewrite everything from scratch.

12           The issue is that you didn't even care enough to try

13   to make what you copied and pasted from your state court

14   pleadings fit into your Amended Complaint.

15           Two issues, one goes back to obviously taking as much

16   as you did from your state court pleadings, lifting it,

17   dropping it in your federal court proceedings is, again, proof

18   positive that you're just trying to re-litigate the state court

19   action here.

20           And I know you say you know it was important for me

21   to have that background.  No, it wasn't, but it was just proof

22   that you were re-litigating the state court action here.

23           But this is what Judge Hardiman sanctioned you for in

24   the Convoy (phonetic) case.  Judge Hardiman is not someone who

25   looks to sanction counsel.

1          I suspect you really had to bother him a great deal

2    to get him to do that, but in this case, you refer to your own

3    client as the Defendant multiple times.  You refer to the

4    Defendants as Plaintiffs multiple times.

5          You discuss in your complaint in this case that Bucks

6    County is the appropriate venue for the case.  It's paragraph

7    197.

8          And you discuss that it is appropriate and why it's

9    appropriate to bring an FDCPA claim in state court.  And that's

10   paragraph 208, okay?

11         You didn't even try to make it look good.  And how

12   can I sit here and conclude that that was anything other than

13   bad faith or vexatious conduct?  That wasn't an oversight.  It

14   wasn't a mistake.

15         And that's why I was trying to get to the bottom of

16   who did this.  I was trying to get you off the hook a little

17   bit and maybe have Mr. Taggart jump in and say he did it, which

18   would have been a separate issue for you, but how can I look at

19   that?

20         I mean, lawyers make mistakes.  Judges do, too,

21   right?  And okay, I understand a typo.  I understand an error

22   here or there.

23         This was not that.  Give me anything to hang on to

24   convince me that this isn't sanctionable conduct?

25              MR. THOMAS:  I will absolutely do my best to give you

1    that.  In this case, Your Honor, you're absolutely correct,

2    some of the facts -- many of the facts were initially taken

3    from prior pleadings or prior discussions after reviewing them,

4    incorporated in for the historical purposes.

5          Your Honor just said that it wasn't important.  We

6    felt that it was needed to try and give historical basis for

7    many of the claims.

8          In regards to the different parties, what I will

9    often do when I do that, is I'll go through and then update the

10   paragraphs either with control, find, and replace to update the

11   party names and then clarify any other further lines that need

12   to be clarified in regards to those specific changes.

13         In this case, and I understand what Your Honor's

14   saying in regards to the -- to specific quoted lines, since

15   this case had originally stemmed from the state court, that's

16   why those were there.

17         It was an oversight and mistake on my behalf to not

18   change those in this Amended Complaint when it was removed,

19   post-removal to take that line out.

20         As we stated -- as I stated previously, Your Honor,

21   trying to do this on my own, trying to actually go through was

22   we all know is a lengthy complaint.  I did miss some things I

23   should have changed.

24         And, frankly, a lot of the party changes were because

25   I had missed those on an updated version when I switched

1    everything for the Amended Complaint versus the state or versus

2    the first one.

3              So it is an error, Your Honor.  I agree.  It's --

4              THE COURT:  An error?

5              MR. THOMAS:  Well, no, it is --

6              THE COURT:  Singular?

7              MR. THOMAS:  There are several errors, I should say.

8              THE COURT:  Countless, countless.

9              MR. THOMAS:  That have gone into that complaint.  I

10   would respectfully say that I have had this issue actually come

11   up in a New Jersey case where the court -- actually we went

12   through every single claim essentially and the court actually

13   said to go back and actually remove any claims that are

14   spurious or not relevant.

15             THE COURT:  Why would that be the court's job?

16             MR. THOMAS:  No, no, it's not the court's job.  The

17   court wanted to go through the claims to try and dismiss them.

18   And we did, we dismissed maybe 18 out of 20.  We dismissed a

19   lot of claims that way.  So what's the court's goal was, to do

20   that.

21             I would suggest in this case, Your Honor, that I

22   could go through and then clear up and delete much of the

23   extraneous items in the current complaint so that way --

24             THE COURT:  We're long past that.  We're long past

25   that.

1          MR. THOMAS:  I --

2          THE COURT:  The issue isn't whether you can correct

3    it in this case.  The issue is why you would do it in this case

4    and are you capable of correcting it going forward?

5          And you know, and again, in reading some other

6    opinions, I don't feel special.  You didn't just do it to me.

7    You do it all the time in all your cases.

8          And, you know, I can't say in all your cases.  In the

9    cases that I read about, but you know, you say in your response

10   while the Court was correct that some paragraphs were certainly

11   copied from other pleadings, okay, you acknowledge that.

12         MR. THOMAS:  Yes, and I still --

13         THE COURT:  At oral argument on the motions to

14   dismiss, I accused you of lifting entire passages from your

15   state court papers, okay, and you stood there and you

16   repeatedly denied doing that to my face.  That was dishonest.

17         MR. THOMAS:  I understand.

18         THE COURT:  You lied to me repeatedly.  You lied to

19   me.  We had that whole discussion.  Didn't -- looks like you've

20   copied and pasted a lot of this.  No.  Why did you lie to me?

21         MR. THOMAS:  The answer was the final version should

22   not have had such drastic errors.  And because a lot of it

23   had -- the claims specifically had actually been essential re-

24   done.  And the facts, while some of them were actually taken,

25   you're correct, if it what I said --

1          THE COURT:  Why did you lie to me?

2          MR. THOMAS:  If what I said was --

3          THE COURT:  Why did you lie to me?

4          MR. THOMAS:  It was not my intent to lie, and if I

5    did so, I apologize, Your Honor.

6          THE COURT:  You mean let's fall back on the old

7    mistakes were made, right?

8          MR. THOMAS:  That's not what I'm saying, Your Honor.

9    I'm saying I should not have lied.  If what I said was

10   incorrect, I apologize.  It was not a mistake, it's --

11         THE COURT:  Hold on.  If what you said was incorrect,

12   you apologize.  That's not an apology.  You stood there at that

13   podium and you lied to me, okay?

14         Now I knew you were lying when you were lying because

15   I have eyes and I could compare the two sets of papers.  The

16   question is why did you lie to me?

17         MR. THOMAS:  And the answer, I can't give a good

18   answer frankly.  The answer is that at the time, I didn't think

19   that there had been such --

20         THE COURT:  How could you not?

21         MR. THOMAS:  Well, hold on.

22         THE COURT:  You did them both.

23         MR. THOMAS:  There had been such drastic --

24         THE COURT:  You did them both.

25         MR. THOMAS:  Even I went through and tried to amend

1   everything that I could, I didn't think everything was still

2   the same where it was as you said essentially the same.  That

3   was my mistake and I was wrong and I apologize for that.

4           THE COURT:  Apologize for lying to me.

5           MR. THOMAS:  I apologize for lying to Your Honor.

6           THE COURT:  Thank you.  And Judge Wolson concluded

7   that you lied to him.  And you were under oath before him just

8   as you are here me today.

9           MR. THOMAS:  Understand.  I believe you're talking

10  about the Pope (phonetic) matter.  At no point was there a lie

11  or anything along those lines given in that case.  I understand

12  what he said and I understand what his ruling was, but again,

13  that was not a lie.

14          There was a few items where he asked about issues

15  with that case.  It was not a lie at all in that case.

16          THE COURT:  Joshua Thomas has appeared before the

17  court twice.  Throughout those cases, he has disregarded the

18  rules and deadlines that ensure cases move in an orderly way.

19          Even worse, he has ignored this court's order.  At

20  the hearing to address the first order, Thomas was not

21  contrite.

22          To the contrary, he lied to the Court about the

23  reason for his actions on the record and under oath.  That's

24  Judge Wolson in the case of Jacovetti v. Shelton.  Had nothing

25  to do with the Pope case.

1          MR. THOMAS:  I apologize, Your Honor.

2          THE COURT:  Well, respectfully, that that exchange

3   and your not knowing what case I was referring to is really

4   disturbing to me because you have a federal judge saying that a

5   member of the bar of this Court lied to him under oath and that

6   doesn't even stand out to you.

7          MR. THOMAS:  It does.

8          THE COURT:  Just as when I mentioned Judge Hardiman

9   at oral argument and you didn't know who that was.  The

10  question becomes is this so routine?  Are judges all over the

11  place describing your conduct that critically that you can't

12  keep it straight?

13         Or do you just -- does that just not make any

14  impression on you?  You are a lawyer.  There is a published

15  opinion with your name all over it and a federal judge saying

16  you lied on the record and under oath.

17         MR. THOMAS:  There were two --

18         THE COURT:  Does that keep you up at night at all?

19         MR. THOMAS:  Yeah, it does, actually.  There were two

20  instances where I've been put under oath ever.  There was that

21  case where frankly I just didn't remember he actually said that

22  I lied.  The Pope one, I did, because --

23         THE COURT:  You didn't remember he said you lied and

24  that's my point, sir.  That's my point.  A federal judge

25  published an opinion calling you a liar.  And not just a liar,

1  a liar under oath.  And you don't remember that?

2         MR. THOMAS:  I don't remember that exchange very

3  well.  I don't remember him using those exact words.  I

4  remember the exchange extremely well because --

5         THE COURT:  Do you remember -- did you read his

6  opinion?

7         MR. THOMAS:  Multiple times, actually.

8         THE COURT:  Multiple times, okay.

9         In your response with respect to point 8, you say to

10 me, with in defending or explaining all of the mistakes, all of

11 the grammatical errors, all of the spelling mistakes, all of

12 the cutting and pasting, all of the stuff we've been talking

13 about, you say that "you will make sure when possible to

14 attempt to proofread the documents in a much better fashion".

15 When possible, you will attempt in a better fashion.

16        MR. THOMAS:  Let me clarify that because I understand

17 now as you say it how that could sound questionable.  I will

18 always proofread them.

19        The issue is I oftentimes in doing it immediately

20 after writing it.  What I'm saying is I will attempt to make

21 sure the proofreading is done distant from the actual drafting,

22 so that way, I catch more errors to make sure they don't happen

23 again.

24        THE COURT:  Can I take any comfort in that?  I mean,

25 can I or any judge take any comfort in that, that you will,

1    when possible --

2            MR. THOMAS:  When --

3            THE COURT:  -- paren synonym, when convenient,

4    attempt I'll give it a shot.  There may be times when it's not

5    possible.  There may be times when I wasn't able to attempt.

6            And there -- and then, you're just going to get

7    recycled crap full of mistakes, but you know on the times when

8    I have time to do it, I'll try to do a better job.

9            MR. THOMAS:  No, the times when I don't have time to

10   do it is when I would ask for an extension or which is to make

11   sure to actually start them earlier, so I always have time to

12   do it with the distance so that way, I catch more mistakes.

13   That's what I'm saying now.

14           THE COURT:  I guarantee you that all of the mistakes

15   we're talking about were made after you got extensions or after

16   you filed something late.  The timelessness is not relevant to

17   it, okay?

18           And again, I want to turn now to lying again.  And

19   this is where we're going to end this, because this is really

20   bad.  This is really bad.

21           You'll recall how our oral began with your opponent,

22   Mr. Barenbaum calling my attention to the fact that you had

23   been suspended in Pennsylvania for failure to comply with your

24   CLE requirements, okay?

25           And I want to go to the transcript that's that part

1    of the transcript.  Oral argument was April 22.  And in

2    response to Mr. Barenbaum's assertions and what he was reading,

3    based on what he had received from Disciplinary Counsel and the

4    Disciplinary Board that you were suspended effective April 16,

5    which was six days prior to our hearing.

6            You told me on April 22nd that you had cured whatever

7    defect had led to your administrative suspension.  You told me

8    "as of today, the CLEs were or I should say as of the beginning

9    of the week the CLEs were complete and I was told that that

10   would mean that I can continuing to practice doing everything I

11   would need to do."  Do you remember saying that to me?

12           MR. THOMAS:  Yes.

13           THE COURT:  All right.  Well, obviously, your status

14   isn't objectively verifiable -- is objectively verifiable.  And

15   when we left Court that day, we sought to verify it.

16           And we were told by counsel for the Disciplinary

17   Board that you were administratively suspended on March 17,

18   2021 for CLE noncompliance, which order became effective April

19   16, six days before our hearing.  That order required you to

20   notify your clients, opposing counsel, and courts before whom

21   you were practicing.

22           You then came to Court on April 22, a week roughly

23   after your suspension became effective.  You took umbrage at

24   the fact that Mr. Barenbaum brought it up, but you were

25   actually obligated and required to tell Mr. Barenbaum before he

1      even got here and your other opponents.

2              You were obligated to tell Mr. Taggart, who had no

3      idea about this.  And he so told me that day.  You were

4      obligated to tell me, okay?

5              Disciplinary Counsel told us that day that Mr. Thomas

6      has not cured his problem.  He still needs to complete his past

7      due requirements, as well as this year's 2020 and 2021 before

8      you would be in compliance.

9              Okay, you told me it's a CLE issue, Your Honor.  It

10     shouldn't have gone into effect.  The CLEs were submitted.  I

11     don't know why they weren't applied.

12             You're under oath here right now.  And I'm going to

13     ask you once.  When you made that statement to me, you were

14     lying to me, weren't you?

15             MR. THOMAS:  When I made the statement, I was

16     mistaken.  I was not intentionally lying.  For the previous

17     year, the last CLEs had been taken at the time frame I

18     expected.  For this year, they had been taken yet.

19             After speaking with the CLE --

20             THE COURT:  I've got more emails to read from.  Be

21     careful from the Disciplinary Counsel.  Be careful.

22             MR. THOMAS:  I understand, I'm saying they were cured

23     by the time this response was submitted, they were cured and I

24     was --

25             THE COURT:  Hold on.  Not by the time this response

1    was submitted, which by the way, is also false, okay?  I'm

2    talking about as of April 22, the CLEs were submitted.  You

3    assured me that you had remedied any administrative issues with

4    respect to your law license on April 22.  When you told me

5    that, that was false and you knew it to be so, wasn't it?

6               MR. THOMAS:  I did not know it to be so.  It was

7    false at the time because the CLEs had not actually all been

8    submitted for that year.

9               THE COURT:  Yes, but you told me that they had been.

10              MR. THOMAS:  I guess I thought they had --

11              THE COURT:  You told me the CLEs were submitted.  And

12   when I asked -- and see, here's the beauty of this.  I knew you

13   were lying when we were having this exchange, okay?

14              Because in addition to your lips moving, which is

15   your tell, all right, nothing that you said made any sense to

16   me because then I said do you have any proof showing that you

17   submitted the credits?

18              I don't have that with me.  I could certainly find

19   the certificates, Your Honor, but I don't have those with me at

20   that time.

21              And I said, well, why don't you forward them to me

22   and to your opponents?  I'll certainly try to find them and

23   submit them, Your Honor.

24              Prompting me to ask you how would you not be able to

25   find them?  What do you mean try and find them?

1        I would need to go onto the website and actually get

2    them, so that way, I can submit them.

3        Well, why don't you just give us whatever you gave to

4    the Supreme Court of Pennsylvania?  Just give them to us.  Why

5    do you have to go find them?  You are telling me that you

6    submitted proof to the Supreme Court of Pennsylvania that you

7    complied with the CLE requirements?

8            Answer:  Yes.

9        You had not done any such thing by April 22nd, had

10   you?

11       MR. THOMAS:  The CLEs had been completed.  I hadn't

12   sent them to the Supreme Court in any way because I wasn't

13   aware at that time that it was required to submit it as well

14   after the order was issued.

15       THE COURT:  Okay, and you -- what you just said to me

16   under oath directly contradicts what you said to me on April

17   22.  Do you understand that?

18       MR. THOMAS:  Yes.

19       THE COURT:  Okay, and in fact in your response, you

20   represent I made it clear that while I knew it had been

21   recently resolved, that is a lie, I was unaware opposing

22   counsel was going to bring the matter up.  I'm quite surprised

23   by it.  I made sure to try and be as candid with the Court as

24   possible.  No, you didn't.

25       MR. THOMAS:  Your Honor, again, I understand --

1          THE COURT:  Because we followed up again after you

2    filed this or after the hearing and before you filed this and

3    both.  And as of April 23rd, we're told you need to complete

4    your compliance requirements for both 2020 and 2021, okay.

5          And on May 11, in advance of this hearing, we

6    followed up again, and we were told on April 27, Mr. Thomas

7    satisfied his requirements with the P.A. CLE Board.

8          In turn, the P.A. CLE Board certified his compliance

9    to the Attorney Registrar.  Immediately, thereafter, the

10   Registrar emailed Mr. Thomas with the requirements for

11   reinstatement and provided the forms necessary to him.

12         If he did not know about the $300 fee because you

13   have to get a $100 penalty *seriatim* you don't take care of it,

14   by April 16th, he certainly knew about it by May 3rd.

15         And we have evidence of course from March of 2021,

16   the certified return receipt requested letter that you

17   received, evidence showing that you knew exactly what the

18   penalties were, what you had to do to cure them, and when the

19   suspension took effect.

20         So as you sat here and stood there in front of me on

21   April 22nd and you assured me that you had remedied your

22   administrative suspension, you lied to me.  And you only took

23   steps to do so after the hearing.  Is that or is that not

24   correct?

25         MR. THOMAS:  Partially correct.  Everything you said

1    is correct except at that time, I was not under -- I was

2    unaware that the CLEs that had been submitted did not actually

3    make it compliant.  Otherwise, you're correct.

4              THE COURT:  You hadn't submitted anything.  That's

5    what they told us.

6              MR. THOMAS:  I understand.

7              THE COURT:  You hadn't submitted anything.  You can't

8    even lie about lying to me.

9              All right, is there anything anyone on the Defense

10   side would like to add to any of this?  I thank you for coming,

11   by the way.  It was certainly optional.  I assume you wouldn't

12   want to miss it.  Anybody?

13             MR. BARENBAUM:  Evan Barenbaum.  No, Your Honor.

14             MS. BETTINO:  No, Your Honor, but just two clarify

15   that the FDCPA statute of limitations is one year.

16             THE COURT:  Oh, yeah, thank you, thank you.

17             MR. MCKEE:  Nothing more, Your Honor.

18             THE COURT:  Peter?

19             Thank you, we're adjourned.

20             MR. THOMAS:  And can -- may we be excused?

21             THE COURT:  You may, thank you.

22             MR. THOMAS:  Thank you, Your Honor.  Are we off the

23   record?

24             THE COURT:  Hold on, start again.

25             Jeff, you ready?

1            THE COURT RECORDER:  Yeah.

2            THE COURT:  Go.

3            MR. THOMAS:  Your Honor, I would like to apologize to

4    you directly and personally for all the difficulty that I've

5    caused.

6            THE COURT:  Thank you.  Okay, we're adjourned.

7    Thanks, everybody.

8            MR. THOMAS:  Thanks.

9         (Proceedings concluded at 11:30 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                               **CERTIFICATE**

2

3

4           I, Chris Hwang, court approved transcriber, certify

5     that the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9

10

11

12

13     _____          May 27, 2021

14     Chris Hwang                   Date

15     Transcriber

16

17

18

19

20

21

22

23

24

25